## BENSON *v.* STATE

### Opinion delivered March 25, 1912.

1. WITNESSES—IMPEACHMENT OF ACCUSED.—Where a defendant in a criminal case testifies in his own behalf, he may on cross examination be questioned as to whether or not he has suffered a former conviction of a crime affecting his credibility, and such conviction need not be shown by the record of the judgment. (Page 90.)

2. APPEAL AND ERROR—HARMLESS ERROR.—The admission of incompetent testimony is not prejudicial if the point testified to is already admitted. (Page 90.)

Appeal from Garland Circuit Court; *C. T. Cotham*, Judge; affirmed.

*Appellant, pro se.*

*Hal L. Norwood*, Attorney General, and *William H. Rector*, Assistant, for appellee.

FRAUENTHAL, J. The defendant, Walter Benson, was indicted for the crime of robbery, charged with having taken by force and intimidation from the person of one W. F. Jennings $6 in money and a watch. Upon his trial he was convicted of said crime, and seeks by this appeal to obtain a reversal of the judgment of conviction principally upon the ground that the evidence was not sufficient or of such a reliable nature as to warrant the verdict returned, and because of error alleged to have been committed by the trial court in the admission of certain testimony. The testimony on the part of the State tended to establish the following facts: W. F. Jennings was a laborer who had resided in the city of Hot Springs for a number of years. On the afternoon and evening of October 22, 1910, he visited several saloons in that city and indulged in taking a number of drinks of intoxicating liquors until he was under their influence. Between 11 and 12 o'clock of that night, he was at a saloon known as "The Last Chance," when the defendant asked him to take a hack ride. He had never seen the defendant before, but agreed to go with him, and both then entered a hack which was driven by one Ben Oaks. At this time Jennings had been drinking to such an extent that he was unable to remember all that happened, but his mental condition was strong and clear enough for him to realize and appreciate what was going on, and he was able afterwards to give such a definite description of the defendant as to identify him. The parties were driven for several blocks in said city when Jennings desired to leave the hack. He directed the driver to stop the hack, and then opened the hack door, and both he and the defendant stepped to the pavement, when the defendant made Jennings throw up his hands and went through his pockets, taking from him his money and watch. Thereupon, defendant either threw or knocked Jennings down, and then rushed to the hack as it was slowly driven away, leaving Jennings lying on the pavement. Jennings then arose, and went to his home, and telephoned to the police headquarters of that city, telling them that he had been robbed and the circumstances thereof, and giving to the officer a description of defendant. Later in the night the police officers arrested the defendant and searched him, but no money or watch was found upon his person. On the fol-

lowing morning, Jennings identified the defendant at police headquarters as the person who had robbed him.

The hack driver testified on behalf of defendant and stated that on the night of October 22 he had driven defendant to The Last Chance saloon and later he and Jennings had gotten into his hack and directed him to drive them to some designated place. On the way he was directed to stop, and both Jennings and the defendant got out of the hack and were quarreling; Jennings accusing defendant of having taken his watch and defendant claiming that he had left it at the saloon, if he had one. The defendant then slapped Jennings, and, as he was driving slowly away, defendant caught the hack and got on the seat with him.

The defendant testified that, after getting in the hack, Jennings desired to get out and refused to go to a resort agreed upon, and an altercation between them ensued; that Jennings drew a knife as if to do him injury, and that he thereupon knocked him down. He denied that he had made Jennings hold up his hands, or that he had gone through his pockets, or that he had taken anything from him.

It is urged by defendant that Jennings had been drinking intoxicating liquors to such an extent, and was so deeply under their influence, that his testimony was not sufficiently reliable to base a conviction upon it. But Jennings appeared before the jury and gave his testimony. He testified to his condition upon the night of the alleged robbery and to his mental ability to know and remember what then occurred. The jury were the judges of his credibility and as to what weight they should give to his testimony. We are of the opinion that the testimony does not show that his mental faculties were so dethroned by drink that he did not know and realize what was occurring. On the other hand, we are of opinion that the testimony is sufficient to show that, while he was not in a condition to resist attack, his mental faculties were strong enough, not only to know what was occurring, but to remember the defendant's appearance. This was the first time he had seen the defendant, and immediately after the alleged robbery he went to his home and called up the police headquarters by telephone and told the officer of the robbery and gave to him such a definite description of the defendant that the officers were enabled thereby to

arrest the defendant later during the night. We think, therefore, that the evidence adduced upon the trial was sufficient to sustain the verdict which was returned.

The defendant was introduced as a witness in his own behalf, and upon his cross examination he was asked if he had pleaded guilty to the crime of petit larceny and been adjudged guilty of that offense. He testified that he had pleaded guilty and been adjudged guilty of that crime. After the defendant had closed his testimony, the State introduced, over his objection, the record of the judgment convicting the defendant of petit larceny, and it is urged that the court committed error in permitting the introduction of said judgment. When a defendant in a criminal case becomes a witness in his own behalf, he is subject to impeachment like any other witness. The testimony which he gives may be discredited in the same manner that this may be done in the case of any other witness. Upon his cross examination, therefore, he may be questioned relative to specific acts for the purpose of discrediting his testimony, and he may be asked as to whether or not he has suffered a former conviction for some crime affecting his credibility. When a defendant is a witness in his own behalf, the purpose of such testimony is only to impair his credibility and not to exclude him as a witness, and such conviction may be shown, therefore, by his own cross examination and need not be shown by the record of the judgment. *Turner* v. *State*, 100 Ark. 199. In this case the defendant had testified that he had pleaded guilty and been convicted of the crime of petit larceny. The record of the judgment of such conviction was only cumulative evidence of the fact which the defendant himself had admitted. If it was error to admit such record, it could not have been prejudicial. As was held in the case of *Meisenheimer* v. *State*, 73 Ark. 407: "The admission of incompetent evidence is not prejudicial if the point testified to is already admitted." *Williams* v. *State*, 66 Ark. 264; *Henry* v. *State*, 77 Ark. 453.

Upon an examination of the entire record in this case, we find no prejudicial error which occurred upon the trial. The judgment is accordingly affirmed.