### WYLIE *v.* STATE.

### HAMILTON *v.* STATE.

## Opinion delivered September 29, 1919.

1. LARCENY—MONEY DEPOSITED WITH ANOTHER—COLOR OF A BET.— Where persons conspire to cheat a man under color of a bet and he simply deposits his money as a stake with one of them, not meaning thereby to part with the ownership thereof, they, by taking the money, commit larceny, and not the less so, though afterwards they, by fraud, made it appear to win.

2. EVIDENCE—LARCENY CASE—INFORMATION LEADING TO ARREST.— One P. claimed to have been robbed of a purse containing money, she having loaned possession of the purse for a moment to her cousin, one H., the defendants being accused of stealing the purse from H. *Held,* testimony of the town marshal, as to how he came to be called, and how he received information leading to the arrest of the accused, was admissible.

3. LARCENY—INSTRUCTION—WAGERED MONEY.—In a prosecution for larceny under the facts set out in the preceding syllabus the trial court charged the jury:

   "You are instructed that if you find from the evidence that H. wagered the money alleged to have been stolen, with W. (accused) as stake holder, and at the time he deposited the same as a wager he meant to part with the ownership therein, then you are instructed this would not constitute larceny, and you will find the defendants not guilty."

   Defendant objected to the phrase, "part with the ownership." *Held,* the instruction was correct, that the phrase meant to "part both with the title and possession of the money."

*Held,* also, it was defendant's duty, in objecting to the instruction to submit to the court a written instruction, defining the objectionable words.

4. LARCENY—MONEY WAGERED.—One who takes money which has been wagered, under the honest belief that he is the owner of the same is not guilty of larceny.

Appeal from Monroe Circuit Court, *George W. Clark,* Judge; affirmed.

*S. S. Jeffries* and *Lee & Moore,* for appellants.

1. The court erred in the admission of the evidence of Jesse Hankins in answer to questions by the State's attorney, as it was hearsay testimony purely, and it was error to refuse to permit Tom Jennings to answer on redirect examination the question as to what was said about taking down the money, etc., as it was a matter vital to the whole case. Authorities are not necessary to be cited, as a defendant has a right to present his side of the case under well recognized rules of procedure and evidence.

2. It was error to give instruction No. 2 for the State. The court should have defined the phrase "part with the ownership" and added the words "in the event he lost" to the instruction. The instruction as given is vague and indefinite. 49 Ark. 147; 75 *Id.* 427; 88 S. W. Rep., cited in note 20, L. R. A. (N. S.) 1164; 72 Ark. 516; 81 Southern Rep. 836, cited in note 20, L. R. A. (N. S.) 1164; 109 Ark. 346.

The instructions are conflicting, as the theory of the defense was that to cheat on a trick or game of cards is not larceny, as shown by the cases cited *supra.* Instructions No. 1 and No. 3 and No. 6 asked by defendant embodied this rule but the court refused all these except No. 3.

3. The evidence was insufficient to convict Arnold Wylie of any crime at all and he was entitled to instruction No. 7. Cases *supra.*

*John D. Arbuckle,* Attorney General, and *Robert C. Knox,* Assistant, for appellee.

1. There was no error in the examination of Jesse Hankins, as complaint and outcry made by one who has been robbed shortly after the robbery is admissible as evidence. Wigmore on Evidence, par. 1762 and 1142.

2. No error in refusing to allow attorney for defendants to ask Tom Jennings what he said about taking down the money.

3. There was no error in giving instruction No. 2. 72 Ark. 516; 75 *Id.* 427; 114 *Id.* 398.

4. The instructions are not conflicting, as the court followed closely the law. 72 Ark. 516; 75 *Id.* 427; 114 *Id.* 398.

5. The evidence shows defendant Wylie equally guilty and there is no error in refusing instruction No. 7. Cases *supra.*

HART, J. Arnold Wylie and Theo Hamilton were convicted of larceny from Smomie Purdemon of about $75 in money which was accomplished by means of a trick with cards with Will Hoy, her cousin. From the judgment of conviction they have duly prosecuted an appeal to this court.

Arnold Wylie and Theo Hamilton were confederates in the fraud. According to the testimony for the State, Smomie Purdemon, accompanied by Will Hoy, her kinsman, went into the depot in the town of Clarendon, about 4 o'clock on the morning of the third day of February, 1919, for the purpose of taking a train. Smomie Purdemon had a purse containing $70 in greenbacks and four or five dollars in silver. Arnold Wylie and Theo Hamilton were already in the depot standing by the stove warming themselves. When Hoy walked up to the stove, the defendant, Hamilton, began a conversation with him by asking him if he knew anything about the death of old lady Caroline, a negro fortune teller, who had just died in the neighborhood. In the course of the conversation Hamilton explained to Hoy that he also could tell fortunes. He said in order to do it, it was necessary for him to have a pack of cards and asked Hoy if he had one. Hoy did

not have any, but the defendant Wylie produced the cards. After Hamilton had received the cards, he said it would be necessary for him to have change for $10 before he could perform the trick. Hoy did not have the change and walked back to where Smomie Purdemon was and borrowed her pocketbook in order to get the change. When he returned with the pocketbook containing the amount of money above stated, Hamilton told him to wait a minute and he would show him a trick. Hamilton told Hoy to hold out his hands and cut the cards into three parts. Hoy had the purse with the money in it in one hand and Hamilton told him to turn the money over to him while he cut the cards. Just as soon as Hamilton got the money he ran off with it. Smomie Purdemon demanded her money but Hamilton pulled his pistol and then ran off with the money. Hoy made a complaint to the city marshal who, after a search arrested Hamilton and Wylie in a rooming house in the town of Clarendon. Both of them were in bed when they were found, but they had their clothes on.

According to the testimony of the defendants, Hoy and Hamilton entered into a wager and Hoy lost the money that way. Hamilton had shown Hoy the deck of cards with the queen of diamonds under the bottom of the pack and then offered to bet Hoy that the queen of diamonds was not there. Hoy accepted the bet and when cards were turned the queen of spades appeared where Hoy expected to see the queen of diamonds, and Hoy thereby lost the bet.

The theory of the State was that Wylie and Hamilton were confederates and conspired together to obtain the money by means of a sham bet or trick with cards.

On the part of the defendants it was contended that they made a real bet with Hoy and that he lost the money in that way.

(1) In *Hindman* v. *State*, 72 Ark. 516, the court held that where persons conspire to cheat a man under color of a bet and he simply deposits his money as a stake with one of them, not meaning thereby to part with the ownership

therein, they, by taking the money, commit larceny and not the less so, though afterwards they are by fraud made to appear to win.

The principle was stated more comprehensively in *Welsh* v. *People,* 17 Ill. 339, where the court said: "The rule is plainly this: If the owner of goods alleged to have been stolen parts with both the possession and the title to the goods to the alleged thief, then neither the taking nor the conversion is felonious. It can but amount to fraud. It is obtaining goods under false pretenses. If, however, the owner parts with the possession voluntarily, but does not part with the title, expecting and intending that the same thing shall be returned to him, or that it shall be disposed of on his account, or in a particular way, as directed or agreed upon, for his benefit, then the goods may be feloniously converted by the bailee, so as to relate back and make the taking and conversion a larceny."

This principle of law was expressly reaffirmed in two later decisions of this court. *Johnson* v. *State,* 75 Ark. 427, and *Coon* v. *State,* 109 Ark. 346. In the application of this principle of law the evidence for the State, if believed by the jury, was sufficient to convict the defendants.

(2)   The next assignment of error is that the court erred in admitting certain evidence given by the town marshal for the State. On this assignment of error we quote from the record the following:

"Q.   Tell who called you to the depot.

"A.   I went to the depot and seen this Will Hoy, and he said he had been robbed.

"Q.   Did you get information from Will Hoy that Smomie Purdemon had been robbed?

"A.   I made a search for these boys, Arnold Wylie and Theo Hamilton, and asked them if they would know the two men if they seen them again; and I found them at Will Williams' house."

It is contended by counsel for the defendants that this testimony was hearsay and was for that reason inadmissible. Oftentimes it is impracticable to go directly into the main issue, and it is necessary to know the cir-

cumstances leading up to it. These circumstances, while not in themselves relevant, are treated as the introduction to the main matter or by way of inducement to it. Hence the preliminary question above quoted was entirely proper. Jones, Commentaries on Evidence, Vol. 1, sec. 137 a.

(3) It is next claimed that the court erred in giving instruction No. 2 on behalf of the State, which is as follows: "You are instructed that if you find from the evidence in this case that Will Hoy wagered the money alleged to have been stolen, with Arnold Wylie as stakeholder, and at the time he deposited the same as a wager he meant to part with the ownership therein, then you are instructed this would not constitute larceny, and you will find the defendants not guilty."

The defendants objected to this instruction and asked that the phrase "part with the ownership" be defined. There was no error in this regard. It is evident that the court meant by the use of the words to part both with the title and possession of the money. Besides if the counsel for the defendants thought otherwise, they might have submitted to the court a written instruction so defining these words and asked that it be given to the jury. Not having done this, they can not complain of the action of the court in refusing to give the definition on its own account. *Paxton* v. *State*, 114 Ark. 398.

(4) The next assignment of error is that the court gave conflicting instructions to the jury. At the request of the defendant the court gave instruction No. 3, which is as follows: "It is not every taking and carrying away that is larceny; it becomes larceny when the taking and carrying away is with the fraudulent intent that is a purpose to steal, and if you find from the evidence that the defendants, or either of them, had engaged in a bet or wager with the prosecuting witness, Hoy, and that said money of the prosecuting witness Hoy, was bet upon said trick or chance and won by the defendants, or either of them, and the money was taken by the defendants under an honest belief that they had won same in said game of

chance, and that said money was their property, and they had a right to remove it, this would not constitute a crime of larceny, as in order to constitute a crime of larceny there must be a taking and carrying away of the property of another with the fraudulent intent to steal same and dispossess the true owner of the possession thereof.''

At the request of the State the court gave instruction No. 5, which is as follows: ''If it is contended on the part of the State that the defendant is guilty of larceny, before you can convict the defendant of the crime of larceny the State must prove beyond a reasonable doubt, first, that the money taken, if any was taken, was the property of Smomie Purdemon, the prosecuting witness, with the felonious intent to steal the same and deprive Smomie Purdemon of the possession thereof. The intent to steal at the time of the taking is an essential element of the crime of larceny.''

A comparison of the language of these two instructions shows plainly that the circuit court properly distinguished between a real bet and one that was merely colorable or simulated for the purpose of getting wrongful possession of the money of the prosecuting witness, and the instructions are not conflicting. On the other hand they clearly submit to the jury the respective contentions of the State and of the defendants.

We find no prejudicial errors in the record and the judgment will be affirmed.