Missouri Pacific Railroad Company *v.* American Fruit Growers, Inc.

Opinion delivered March 31, 1924.

1. Carriers—liability for damage to goods.—In the absence of an express stipulation in the contract to the contrary, a common carrier is responsible as insurer of goods received for shipment against all loss or damage, except such as is caused by the act of God, or the public enemy, or from inherent defects in the commodity shipped.

2. Carriers—duty as to perishable goods.—When a carrier holds itself out as proposing to provide means of preserving perishable goods, it must exercise ordinary care in the adoption of such means of transportation and in furnishing such equipment as will accomplish the purpose.

3. Carriers—damage in transit—presumption.—In the absence of proof to the contrary, damage to goods in transit is presumed to have occurred on the line of the delivering carrier; and this rule is not changed by the Federal statute making the initial carrier liable for an injury occurring over a connecting line of railroad.

4. Appeal and error—harmless error.—One may not complain of a correct instruction which conflicted with one given at his request, and which was more favorable to him than he was entitled to.

5. Carriers—duty to ice perishable fruit—instruction.—In an action against a connecting carrier for damages to carloads of peaches caused by failure to ice the fruit properly, defendant was not entitled to an instruction that there was no duty to ice the cars before the shipment reached its first regular icing station, since there might have been an emergency requiring the cars to be re-iced before reaching that station.

Appeal from Howard Circuit Court; *B. E. Isbell,* Judge; affirmed.

*E. B. Kinsworthy, R. E. Wiley,* for appellant.

Carriers are not obligated to furnish any special or protective service which is not specifically authorized by the tariffs filed with the Interstate Commerce Commission. There is a conclusive presumption of law that the contents of these schedules are known to and binding upon the shippers as well as the carriers. 240 U. S. 632, 60 L. ed. 632; 233 U. S. 173 (58 L. ed. 901); 241 U. S. 197 (60 L. ed. 948); 233 U. S. 97. The burden of proving negligence on the part of the appellant was upon the appellee. Elliott on Railroads, § 1516; 174 S. W. 714. Proof that the peaches were in good condition when shipped and in a damaged condition when delivered, does not prove negligence. Under the Carmack Amendment, the rights and liabilities of the parties are governed by the acts of Congress. 241 U. S. 319 (60 L. ed. 1022); 240 U. S. 34 (60 L. ed. 511); 249 U. S. 186 (63 L. ed. 552). On a claim based on negligence the plaintiff has the burden of proving negligence. 12 Howard 272; 11 Wallace 129; 10 Wallace 176; 222 N. Y. 198; 116 Atl. 245; 110 N. W. 897. It was incumbent upon appellee to show that the icing and handling provided by the regulations fell short of ordinary care and constituted neglect. 111 Ark. 196; 174 S. W. 714. The instructions given by the court on the burden of proof were conflicting, and constituted reversible error. 94 Ark. 282; 88 Ark. 550; 87 Ark. 364.

*W. P. Feazel,* for appellee.

The law presumes the delivering carrier to be the negligent one in the absence of a showing as to when and where the damage occurred. 86 Ark. 484; 73 Ark.

112; 118 Ark. 73. A carrier is responsible as an insurer except in certain specific instances, and the burden is on the carrier to show that the loss or damage fell within the exceptions. 100 Ark. 269; 118 Ark. 400; 150 Ark. 307; 117 Ark. 451; 100 Ark. 37; 35 Ark. 402; 147 Ark. 109. The same rule obtains in the Federal Supreme Court. 226 U. S. 491 (33 S. Ct. 148); and is not changed or modified by the Carmack Amendment. 241 U. S. 319 (36 S. Ct. 555). Where the plaintiff, in an action under the Carmack Amendment, shows the merchandise was delivered to the initial carrier in good condition and delivered to the consignee in damaged condition, he has made a *prima facie* case. Roberts, Fed. Liabilities of Carriers, § 340; 233 U. S. 481 (32 S. Ct. 205).

McCulloch, C. J. This is an action instituted by appellee, a corporation, against appellant railway company, to recover compensation for damage to three carloads of peaches transported over appellant's railroad from Nashville, Arkansas, to St. Louis, it being alleged that the damage was caused by delay and by failure to properly ice the fruit, which was shipped in refrigerator cars.

The shipment of each of the cars originated on the line of the Memphis, Dallas & Gulf Railroad Company, and was delivered to appellant as its connecting carrier at Nashville, Arkansas, and the transportation and delivery were completed by appellant. One of the cars was shipped from Tokio on July 6, 1921, and the consignment reached St. Louis on July 7, 1921; another car was shipped from Tokio on July 16, 1921, and arrived at St. Louis on July 19; and the other car was shipped from Murfreesboro, Arkansas, on July 16, 1921, and arrived at St. Louis on July 19.

It is alleged in the complaint, and the proof tends to show, that the fruit, in good condition, was properly packed and loaded into iced refrigerator cars and delivered to appellant by the initial carrier at Nashville, but that, when the fruit arrived in St. Louis, it was soft, over-ripe, and unmerchantable, and had to be sold at

greatly reduced prices. Appellee proved by witnesses who examined the fruit in St. Louis that the temperature in the cars was not sufficient to preserve the fruit, and that the damage had resulted from failure to keep the cars properly iced. Witnesses testified that the temperature of the cars was 58 degrees at the top and 48 degrees at the bottom, and that peaches would not be protected from deterioration at a temperature above 48 degrees—some of the witnesses said not above 45 degrees.

Appellant denied that it failed to transport the cars of fruit expeditiously or failed to keep them properly iced, alleging, on the contrary, that it re-iced the cars of fruit at all regular icing stations. It was proved by appellant that its regular icing station nearest to Nashville was at Gurdon, which is on the main line and about sixty miles distant from Nashville. Appellant introduced testimony to the effect that, when the cars reached Gurdon, they had a supply of ice in the bunkers, and were properly re-iced at that place, and again re-iced at other regular icing stations between there and St. Louis. Appellant also introduced proof tending to show that the deterioration of the fruit was caused by disease known as brown rot, and not from any lack of refrigeration.

Appellee introduced testimony in rebuttal tending to show that the fruit in question did not have this disease, and showed no evidence of it, and that the damage was caused entirely by lack of refrigeration.

The verdict of the jury was in favor of appellee.

It is earnestly insisted by counsel for appellant that the evidence on the vital issues in the case is undisputed, and that the verdict is not supported by any substantial evidence. We cannot agree with that contention, for we think that the evidence showing the condition of the fruit when it arrived in St. Louis, together with the expert testimony of witnesses who were familiar with fruit shipments, was sufficient to warrant the finding that the fruit, if in good condition when shipped and properly iced, was

damaged on account of failure to keep the cars properly iced; and there was other testimony adduced to the effect that the fruit was in good condition, free from disease, and was properly packed when loaded into the refrigerator cars at points of shipment. The witnesses introduced by appellant testified positively as to the re-icing of the cars, and there was no direct contradiction of this testimony, but the other testimony as to the condition the fruit was in when shipped and when received in St. Louis, together with the testimony of the expert witnesses, necessarily constituted a contradiction of the testimony of those witnesses who stated that the cars were properly iced.

The law is well settled that a common carrier, in the absence of an express stipulation in the contract to the contrary, is responsible as insurer of goods received for shipment against all loss or damage, except such as is caused by the act of God or the public enemy, or from inherent defects or weakness in the commodity shipped; and that, when a carrier holds itself out as proposing to provide means of preserving perishable goods, it must exercise ordinary care in the adoption of such means of transportation and in furnishing such equipments as will accomplish the purpose. *St. L. I. M. & S. Ry. Co.* v. *Renfro,* 82 Ark. 143; *Gibson* v. *Railway Co.,* 93 Ark. 439; *C. R. I. & P. Ry. Co.* v. *Lawton Refining Co.,* 253 Fed. 705.

Counsel insist that the court erred in giving an instruction placing the burden on appellant of showing that the injury to the fruit, if any, did not occur on its own line. We think this instruction was correct, for it told the jury that, if the cars of peaches were in good condition when delivered to and accepted by appellant for transportation, and were found on arrival at destination to be in damaged condition, "then the law presumes the damaged condition was caused by the negligence of the defendant carrier." Appellant was the delivering carrier, and it has always been the law that, in the absence of proof to the contrary, damage to goods in transit is presumed to have occurred on the line of the

delivering carrier.  *St. L. I. M. & S. Ry. Co.* v. *Coolidge,*
73 Ark. 112.  This rule has not been changed as to inter-
state shipments by the Federal statute known as the
Carmack Amendment.  That statute merely makes the
initial carrier responsible to the owner of the goods for
damage occurring while in transit on any line of either
of the carriers, but it does not relieve a connecting car-
rier on whose line the damage occurred from liability to
the owner.  *Gibson* v. *Railway Co.,* 93 Ark. 439; *Georgia,*
*Florida & Alabama Ry. Co.* v. *Blish,* 241 U. S. 190.  The
reason which the courts have given for raising the pre-
sumption which places the burden of proof on the carrier
to clear itself of the charge of negligence is that the car-
rier has the best, and oftentimes the only, opportunity
to determine when and how the injury occurred, and this
reason still applies to a shipment of goods over con-
necting lines of railroad, notwithstanding the absolute
liability of the initial carrier under the Federal statute.
The presumption still prevails, in the absence of proof,
that the damage occurred on the line of the delivering
carrier, and the delivering carrier is liable to the owner,
notwithstanding the absolute liability of the initial car-
rier.

The court gave another instruction, at the request
of appellant (instruction No. 12), telling the jury that
"the burden of proof is upon the plaintiff to prove by a
preponderance of the testimony that the carrier was neg-
ligent in failing to use ordinary care to re-ice the peaches
in transit."  It is insisted that the other instruction is
in conflict with this, but the answer to that contention
is that, if it is conflicting, the latter instruction was more
favorable than appellant was entitled to, and it therefore
cannot complain because the court gave the other one,
which was correct.

Appellant insists that it was not bound, under the
law, to re-ice the cars until they reached, in due course
of expeditious transportation, the regular icing station
at Gurdon, and was not responsible for failure to suffi-
ciently ice the cars on the line of the initial carrier.  Pur-

suant to that contention, appellant asked the following instructions, which the court refused to give, and error is assigned on that account:

"9.  As to the cars of peaches, you are instructed that defendant was not required to re-ice the peaches at Nashville, but was only required to re-ice them at the first re-icing station on the line of defendant, which was at Gurdon; and, even if you should believe that the peaches were damaged by failure to re-ice, still, if you also believe from the testimony that such damage was caused on account of the failure to re-ice before the shipments reached Gurdon, then your verdict should be for defendant as to such damage.

"10.  The court instructs you that, if any damage occurred to the peaches on account of the delay of the shipper in the loading of the car and the melting of the ice during that delay, the defendant is not liable for any such damage, if you further believe from the testimony that this defendant iced the cars at its first icing station after leaving Nashville and at every regular icing station thereafter."

Counsel for appellant base their contention on the authority of the decision of this court in *Wright* v. *Midland Valley R. Co.,* 111 Ark. 196.  The court, however, gave the following instruction requested by appellant:

"8.  You are instructed that, as to the three cars of peaches, this defendant is not liable for any delay or failure to ice or any other mishandling, if any, which occurred on the line of the M. D. & G. before the cars were delivered to the defendant; and, even though you should find from the testimony that damage occurred to the peaches on account of delay or failure to ice or properly refrigerate the shipment, still, if you also believe from the testimony that the delay or failure to re-ice or properly refrigerate, which caused the damages to the peaches, occurred before the cars were delivered to the Missouri Pacific Railroad at Nashville, then your verdict should be for the defendant."

We think that instruction No. 8 sufficiently covered the subject, and that there was no prejudice in refusing to give the other requested instructions. It will be observed that instruction No. 8 made the liability of appellant depend entirely upon its own failure to re-ice the cars, and told the jury, in express words, that if the "delay or failure to re-ice or properly refrigerate, which caused the damage to the peaches, occurred before the cars were delivered to the Missouri Pacific Railroad at Nashville," the verdict should be for the defendant. Appellant was not entitled to an instruction specifically telling the jury that there was no duty resting upon it to ice the cars at Nashville, for the proof showed that there was an icing plant there, and there might have been an emergency which, in the exercise of ordinary care, called for re-icing of the cars.

Our conclusion is that the case was properly sent to the jury on the issues presented, and that there was sufficient evidence to support the verdict.

Judgment affirmed.