ZORUB *v.* MISSOURI PACIFIC RAILROAD COMPANY.

Opinion delivered September 29, 1930.

*Murphy & Wood,* for appellant.

*R. E. Wiley* and *Richard M. Ryan,* for appellee.

HART, C. J., (after stating the facts). It is first earnestly insisted by counsel for the plaintiff that the undisputed evidence shows negligence on the part of the defendant. In making this contention, they point out that several disinterested witnesses saw the shipment of goods when they were delivered to the plaintiff's store in Hot Springs, and that one of the boxes appeared to have been tampered with, that it appeared to have been opened before it was delivered to the plaintiff, and that about one-half of the contents of the box appeared to be missing and that the remaining contents of the box were Ori-

ental rugs. The agent of the transfer company who handled the shipment at Hot Springs said that one of the boxes appeared to have been tampered with when the goods were delivered to the transfer company, and that it was not tampered with while in the possession of the transfer company. The transfer agent who handled the shipment at Eureka Springs testified that when the shipment of goods was delivered to him at the store of the plaintiff in Eureka Springs, the goods were securely packed in strong boxes, and that the goods were delivered to the railroad company in Eureka Springs in the same condition as when received. It will be noted, however, that the plaintiff alone testified that the goods now claimed to be missing were packed in the boxes that were shipped from Eureka Springs to the shipper's order at Hot Springs. Now, the gist of the action was the recovery of the value of five Oriental rugs claimed to be missing and to be worth something over $1,300.

In the first place, this court is committed to the rule that where a witness is a party to the suit and thereby interested in the result of it, his testimony cannot be said to be undisputed and the case must be submitted to the jury. *Skillern* v. *Baker,* 82 Ark. 86, 100 S. W. 764, 118 Am. St. Rep. 52, 12 Ann. Cas. 243; *Ford* v. *Wilson,* 172 Ark. 335, 288 S. W. 712; and *Blankenship* v. *Modglin,* 177 Ark. 388, 6 S. W. (2d) 531. Zorub being the plaintiff in the action and being the only person who testified that the five rugs were packed in the box, under the rule above announced, the question was properly submitted to the jury on this issue. The jury might have found that the testimony of Zorub was not true, or that he was mistaken, and that the five rugs which were the basis of this suit were never packed and shipped with the other rugs.

Again, it cannot be said that the testimony was undisputed. Of course, if the witnesses for the transfer company who handled the goods and the witnesses who saw the boxes on the platform when they were delivered to

the plaintiff are telling the truth, one of the boxes ap-
peared to have been tampered with and was only about
half full of goods. As above stated, the jury might have
found that the five rugs now claimed to be missing were
never placed in the box or, if they were placed there, that
they were abstracted before the box was received by the
defendant. According to the testimony of the witnesses
for the defendant, the shipment did not appear to have
been tampered with, but they might have been mistaken
in this. At any rate, they testified in unequivocal terms
that the boxes were not tampered with in transit while
they were in the possession of the defendant; and their
testimony in this respect, if true, tended to contradict the
testimony of the witnesses for the plaintiff. The jury was
the judge of the credibility of the witnesses and might
believe such of their testimony as it thought to be true
and reject that part which it thought to be false. In the
exercise of its discretion in this respect, it cannot be said
that the plaintiff established his case by uncontradicted
testimony. Hence, we hold this assignment of error is
not well taken.

In the next place, it is contended that the court erred
in refusing to give an instruction to the jury requested
by the plaintiff. We do not deem it necessary to set out
the instruction, for in other instructions given to the jury
at the request of the plaintiff the case was fully and
fairly submitted to the jury under the principles of law
repeatedly decided by this court. *Mo. Pac. Rd. Co.* v.
*American Fruit Growers, Inc.*, 163 Ark. 318, 260 S. W. 39,
and cases cited. In that case, it was held that, in the
absence of proof to the contrary, damages to goods in
transit is presumed to have occurred on the line of the
delivering carrier. The court instructed the jury on this
point as requested by the plaintiff, and the jury might
have found that under the evidence adduced by the de-
fendant that the loss, if any, to the shipment occurred on
the line of the initial carrier and not on the line of the
defendant as the delivering carrier.

238

It is next insisted that the judgment should be reversed because the circuit court found that the verdict was against the preponderance of the evidence, and that it became its duty to set it aside. This court is committed to the rule that where the trial court finds that the verdict is against the preponderance of the evidence, it must be set aside and a new trial granted. *Mueller* v. *Coffman*, 132 Ark. 45, 200 S. W. 136; *Pettit* v. *Anderson*, 147 Ark. 468, 227 S. W. 772; *Bean* v. *Coffee*, 169 Ark. 1052, 277 S. W. 522; *Spadra Coal Co.* v. *Harger*, 130 Ark. 374, 197 S. W. 705; *Spadra Coal Co.* v. *Callahan*, 129 Ark. 448, 196 S. W. 477; and *Twist* v. *Mullinix*, 126 Ark. 427, 190 S. W. 851.

We do not think the record sustains the contention of counsel. When a motion for a new trial was first presented to the court, certain remarks were made by the court with reference to it which are as follows:

"I really thought Mr. Zorub was entitled to recover something and was surprised at the verdict of the jury, but I don't know whether the court should set up his judgment against the judgment of the jury, but I believe Mr. Zorub was entitled to something."

Then the court took the motion for a new trial under advisement. Several days thereafter, when he finally overruled the motion, he made the following statement:

"I remember when the motion for a new trial was presented that we discussed it considerably, and that part of the motion that appealed to me at the time was your persistence in asking some question of Borland that I had held to be incompetent. That was with reference, I believe, to Mr. Zorub's reputation and standing; I had held that that was not a competent question, and, as I remember now, you asked that question a time or two afterwards and I felt really at the time, and do now, that that wasn't just a mere oversight on your part, but the purpose of it maybe was to create a feeling against Mr. Zorub. That was the part of the motion for a new trial that appealed to me, but at the time the objection was

made to that question I told the jury not to consider it, and I know I had quite a bit to say about the practice among some of the attorneys with reference to asking questions that I felt they knew to be improper, and if this had been the only time that that practice had been indulged in I would have set the verdict aside just on that ground. Now, I think I remember, too, expressing some opinion I had as to what I thought the verdict of the jury might be and I think did state that I thought the jury would find in his favor for some amount. I know I had that sort of an opinion about it at the time, and it is likely that I expressed such an opinion the day we had the motion for a new trial up. Of course, what I had to say at that time was just in conversation with the attorneys who were present on said occasion. I don't remember, however, saying that I would set the verdict aside except for the fact that the Supreme Court would reverse it; I don't remember that I had an idea of that kind about the matter.''

Mr. Scott Wood: ''Just let that part of it go out then; fix it there to make it reflect the truth as you remember it, Judge; that is all we want.''

''The court then struck out the last clause of the court's purported remarks on page 160, reading as follows: 'and if I thought the Supreme Court would not reverse the case I would set the verdict aside.'

The court: ''I took it under advisement for the purpose of determining whether I would set it aside for your persistence in asking some question that I had held to be incompetent, but some of the attorneys have done that, and rather practiced it to some extent, and I just didn't want to do that for the first time in this case, but that was the part of the motion that I considered the most seriously. Of course, on the merits of the case I likely had not considered the facts in the case as fully as the jury had; I may sometimes express an opinion about what a jury will likely do about a case, when I perhaps had not followed the testimony as closely as the jury had, but I

think I made the statement about as it is here, with the exception I don't remember saying that I would set it aside if I didn't feel the Supreme Court might reverse my order in setting it aside.''

What was said by the court has been presented thus fully in order that the trial judge's mental attitude in passing on the motion for a new trial may be ascertained from the record. When the whole matter is considered, we do not think it can be said that the circuit court in any sense found that the verdict of the jury was against the preponderance of the evidence. As stated by the court, what was said by the trial judge when the motion was first presented was merely a conversation with attorneys in the case. It is one thing for a judge to express surprise about the verdict of a jury, because in his opinion many things might have entered into the minds of the jury in finding it. In order to find that it has erroneously overruled a motion for a new trial, it is necessary that a circuit court make a finding that the verdict of the jury is against the weight of the evidence; and a mere declaration that the court would have found the verdict differently does not amount to such finding. The court must not only differ with the jury in its conclusion upon the facts, but must find that the verdict of the jury is against the weight of the evidence, before the verdict should be set aside.

It is next insisted that the judgment should be reversed because of the improper conduct of the attorney for the railroad in the cross-examination of the plaintiff. The record shows that the attorney for the defendant asked the plaintiff if he had not had a claim against an express company for a case of imported nuts which turned out to be a case of Scotch whiskey. He was permitted to explain about the shipment and why he withdrew his claim against the express company. There was no error in this respect. It is true that the trial court should never permit counsel to browbeat or intimidate a witness or to ask him questions which are impertinent or

insulting and which have no reasonable bearing upon the issue to be tried. It is well settled, however, that such discretion is vested in the trial court, and that, for the purpose of testing the credibility of the witness, counsel may in good faith ask him questions relating to his moral delinquencies and other things of that sort. *Webb* v. *State*, 138 Ark. 465. 212 S. W. 567; and *Ogburn* v. *State*, 168 Ark. 396, 270 S. W. 945. Many other cases to the same effect might be cited, but the rule is so well settled that it is unnecessary to do so. In this connection, it may be stated that the same rule obtains in civil as in criminal cases.

It is next insisted that the court committed a like error in the cross-examination of J. Gus Bourland, a witness for the plaintiff. The court properly permitted this witness to be asked about certain contradictory statements he was claimed to have made with regard to the transaction. There is nothing to show that the examination of the witness in this respect was not made in good faith, and the trial court properly allowed it as testing the credibility of the witness, and no attempt was made to contradict his answer to the questions. Other matters alleged to be erroneous were excluded from the jury, and no answer was made by the witness to these questions. Hence, no prejudice could have resulted to the plaintiff in this respect, whether the questions in the cross-examination of the witness were proper or not.

We find no reversible error in the record, and the judgment will be affirmed.

Mr. Justice KIRBY dissents.