TROTTER *v.* STATE.

4550                                                    219 S. W. 2d 636

Opinion delivered April 18, 1949.

*Claude F. Cooper,* for appellant.

*Ike Murry,* Attorney General and *Arnold Adams,* Assistant Attorney General, for appellee.

ED. F. McFADDIN, Justice. Upon an information, the sufficiency of which is not questioned, the appellant Lloyd ''Doll'' Trotter was tried, and convicted, of the crime of robbery. See § 3035, Pope's Digest, and § 41-3601 Ark. Stats., (1947). His motion for new trial contains 13 assignments, and we group and discuss these in suitable topic headings.

I. *Sufficiency of the Evidence.* Included herein are assignments 1, 2, 3, 11 and 12. Viewed in the light most favorable to the State, as we do when the defendant appeals from a judgment based on a jury verdict of guilty,* the evidence reflects that Trotter, Garner and Brewer (hereinafter called culprits) suspected that Mitchell (hereinafter called victim) had some money or other property on his person. The culprits persuaded the victim to leave a dance and go with them out into the darkness, and then they attacked him and took his wrist watch, cigarette lighter, glasses and billfold. Whether Trotter obtained any money from the billfold was not shown, but he did rifle it for anything of value. Mitchell's glasses were recovered from a truck in which Trotter was hiding; and the watch and cigarette lighter were recovered from Brewer.

While the culprits were attacking and robbing Mitchell the law enforcement officers came upon the scene, and Brewer and Trotter fled. Garner told the officers that he was trying to take Mitchell home as being intoxicated, but Mitchell informed them: ''Like hell he's trying to take me home. They robbed me and took my money

---

* See *Slinkard* v. *State,* 193 Ark. 765, 103 S. W. 2d 50, and cases collected in West's Arkansas Digest, "Criminal Law," § 1159(2).

and watch and glasses, and now they are trying to kill me." ₙ

The officers then took Mitchell and Garner in charge, and drove to Mitchell's parked truck, where they found Trotter attempting to conceal himself. Mitchell's glasses were found in the truck.

In his defense, Trotter denied any act of robbery. He claimed that Mitchell had cursed and struck him, that a fight had ensued, and that he fled from the officers and went to Mitchell's truck to await his arrival, and to make him apologize for the cursing. The jury disbelieved the defense; and the evidence—only a brief portion of which we have summarized—is sufficient to show that the culprits successfully engaged in the enterprise of robbing the victim. See *Shell* v. *State,* 84 Ark. 344, 105 S. W. 575 and *Jenkins* v. *State,* 191 Ark. 507, 87 S. W. 2d 60.

II. *Corroboration.* In attacking the sufficiency of the evidence, appellant's learned counsel says: "There was no evidence against the defendant except the evidence of accomplices, and there certainly was no evidence aside from and independent of the evidence of the accomplices that would, in any manner, tend to connect the defendant with the crime of robbing Mitchell."

Garner and Brewer were also charged with the robbery of Mitchell. They confessed and accepted sentences. Trotter obtained a severance, and denied guilt. In the trial of Trotter (from which comes this appeal) the court instructed the jury that Brewer and Garner were accomplices; and the court also correctly announced to the jury the law as to the necessity and extent of corroborating evidence (see § 43-2116 Ark. Stats. 1947 and decisions there cited). The appellant did not object to such instruction, and offered no additional or supplementary instructions concerning either accomplices or corroboration. The witness Charles Adams testified that he heard the conversation between the three culprits and the victim, saw the culprits lure the victim away from the dance, and beat him; and also saw Trotter rifle Mitchell's billfold. In the trial court appellant did not claim that

Adams was an accomplice, did not ask the court to so declare, and did not request an instruction submitting that issue to the jury. Therefore, appellant waived the question of Adams being an accomplice. See *Morris* v. *State,* 197 Ark. 778, 126 S. W. 2d 93, and *Slinkard* v. *State,* 193 Ark. 765, 103 S. W. 2d 50. Adams has never been charged with the robbery, and his testimony, in sufficient essentials, corroborates that of the admitted accomplices.

III. *Alleged Hearsay Evidence.* Assignments 4 to 10, inclusive, in the motion for new trial present this topic. At the time of Trotter's trial Mitchell was in the United States Navy, and the prosecution was permitted to prove two statements made by Mitchell.

*First Statement.* As previously recited, Trotter fled on the approach of the officers. When Garner sought to allay suspicion by saying that he was taking Mitchell home as being intoxicated, Mitchell said: "Like hell he's trying to take me home. They robbed me and took my money and watch and glasses, and now they are trying to kill me."

Trotter claims that this statement by Mitchell was made in Trotter's absence, and was hearsay and inadmissible. We hold that the statement by Mitchell was a part of the *res gestae,* and admissible as such. The remark was immediately connected with the robbery, and possessed the spontaneity and other essentials of *res gestae.* In Underhill on Criminal Evidence, 4th Ed., § 611, p. 1189 this appears: "Anything the person robbed may have said during the assault which preceded or accompanied the robbery, if a part of the *res gestae,* is admissible." See, also, *Rogers* v. *State,* 88 Ark. 451, 115 S. W. 156, 41 L. R. A., N. S. 857, and 22 C. J. 461.

*Second Statement.* The police officers put Mitchell and Garner in the police car immediately after the foregoing statement, and Mitchell then said of Trotter: "He might be back down at my truck."

The officers drove immediately to Mitchell's truck, and found Trotter attempting to conceal himself in the truck. This second statement by Mitchell was hearsay,

but is admissible. The statement merely served to explain why the policemen went to Mitchell's truck. In *Reeves* v. *Jackson,* 207 Ark. 1089, 184 S. W. 2d 256, and, again, in *Amos* v. *State,* 209 Ark. 55, 189 S. W. 2d 611, hearsay evidence was admitted as explanatory of the actions of the witness in events leading up to the main transaction. In the case at bar, the policeman was testifying as to where he arrested Trotter; and the hearsay evidence was merely incidental to the arrest. In *Wylie* v. *State,* 140 Ark. 24, 215 S. W. 593 the arresting officer was allowed to detail some of the hearsay evidence explaining why he went to a certain place to arrest the defendants. In holding such hearsay evidence to be admissible, Mr. Justice Hart said:

"Oftentimes it is impracticable to go directly into the main issue, and it is necessary to know the circumstances leading up to it. These circumstances, while not in themselves relevant, are treated as the introduction to the main matter or by way of inducement to it. Hence the preliminary question above quoted was entirely proper. Jones, Commentaries on Evidence, Vol. 1, § 137a."

Under authority of the foregoing cases, we deny appellant's assignments regarding the second statement.

IV. *Impeaching the Defendant's Credibility.* This is assignment 13 in the motion for new trial. Trotter testified as a witness in his own behalf; and on cross-examination the State—over defendant's objections—was permitted to interrogate him and obtain answers as to previous convictions and also specific acts of misconduct. The defendant admitted that he had served two sentences in the Boys' Industrial School, for burglary and grand larceny, and also admitted that he had made contradictory statements concerning his participation in one of these affairs. The trial court, in admitting the testimony, instructed the jury in this language: "It may be inquired into only as going to the credibility of this witness, and can be considered by the jury for no other purpose."

With the limitation contained in the court's ruling as quoted there was no error in allowing the State to

thus cross-examine the defendant for the purpose of impeaching his credibility. In *Benson* v. *State,* 103 Ark. 87, 145 S. W. 883, Mr. Justice FRAUENTHAL, speaking for this court, said:

"When a defendant in a criminal case becomes a witness in his own behalf, he is subject to impeachment like any other witness. The testimony which he gives may be discredited in the same manner that this may be done in the case of any other witness. Upon his cross-examination, therefore, he may be questioned relative to specific acts for the purpose of discrediting his testimony, and he may be asked as to whether or not he has suffered a former conviction for some crime affecting his credibility. When a defendant is a witness in his own behalf, the purpose of such testimony is only to impair his credibility and not to exclude him as a witness, and such conviction may be shown, therefore, by his own cross examination and need not be shown by the record of the judgment." See, also, *Zorub* v. *Mo. Pac. R. Co.,* 182 Ark. 232, 31 S. W. 2d 421 and *Bockman* v. *Rorex,* 212 Ark. 948, 208 S. W. 2d 991, and cases there cited.

*Conclusion:* We have examined all of the assignments contained in the motion for new trial, and find no error. Affirmed.