LAMB *v.* STATE.

4650                                                      238 S. W. 2d 99

Opinion delivered April 2, 1951.

*E. J. Butler,* for appellant.

*Ike Murry,* Attorney General and *R. Ben Allen,* Special Assistant Attorney General, for appellee.

Ed. F. McFaddin, Justice. Appellant was convicted of second degree murder for the admitted homicide of John L. Gage. The motion for new trial contains five assignments.

I. *Sufficiency of the Evidence.* Assignments 1, 2, and 3 in the motion for new trial are embraced in this topic. Appellant and deceased, both mature men, had a dispute concerning cultivation of a six acre tract, and appellant claimed his life was threatened. He consulted his brother and others; and the next morning armed himself with a shotgun and went to his work in the field near the disputed tract. He and deceased soon met, and appellant shot the deceased, causing instant death. Appellant testified that he fired in necessary self-defense, and his witnesses tended to support his claim.

The witnesses for the State—none being an eye witness—testified to facts and circumstances tending to show that the killing was murder: deceased was shot twice in the head; the shots entered the skull behind the right ear and emerged from the skull near the left eye socket; two shots were fired some minutes apart; deceased, at most, had only a tractor crank handle and pocket knife as weapons; there was no struggle, fight or encounter at close range; appellant admitted deceased was at a distance of ten or eleven feet when the shots were fired; appellant had armed himself with a single-barrel shotgun before leaving his home, and had sufficient time to reload the gun between the shots. One witness testified as to what the appellant told him about the killing:

". . . he (appellant) told us he got up that particular day and carried his gun to the woods with him, or to the thicket, and he left his gun there and went out where Mr. Gage was; he also stated that they finally resumed the argument they had the previous day, and Mr. Gage jumped off the tractor and grabbed the crank and that he (appellant) ran to the woods and got his gun and shot him."

Another witness testified that appellant gave him this version of the killing:

". . . he (appellant) said Mr. Gage took after him with a knife and the crank and he stayed out of his way and he said when he picked up the gun Gage said, 'You can kill me, Lamb, if you want to, but you will go to the electric chair,' and he (appellant) said he turned and he shot him."

Considering all the testimony and all the facts and circumstances, including the course of the bullets through the skull of the deceased, it is clear that a question of fact was presented as to whether the appellant committed murder or acted in self-defense. When we view the evidence in the light most favorable to the jury verdict, as we do when the defendant appeals from a verdict of guilty,[1] we reach the conclusion that the evidence supports the verdict.

II. *Refusal to Give an Instruction Requested by Appellant.* This is Assignment No. 4 in the motion for new trial. The requested and refused instruction reads:

"The Court instructs the jury, that if any reasonable view of the evidence is or can be adopted which admits of a reasonable doubt of the guilt of the defendant, A. T. Lamb, then it is your duty to adopt such view and acquit him."

Appellant says that the instruction should have been given and cites *Price* v. *State,* 114 Ark. 398, 170 S. W. 235, as authority. The reason the trial court did not give the

[1] Such is the rule on appeals in criminal cases. See *Trotter* v. *State,* 215 Ark. 121, 219 S. W. 2d 636, and *Slinkard* v. *State,* 193 Ark. 765, 103 S. W. 2d 50.

Instruction No. 3 was not because of any claimed vice or defect in it, but because the trial court said the point had been covered by other instructions. In this we hold the trial court was correct:

(A)—The Court told the jury:

"The burden in the whole case is on the State; and when evidence is introduced either on the part of the State or the defendant which tends to justify or excuse the act of the defendant, then if such evidence in connection with the other evidence in the case raises in the minds of the jury a reasonable doubt as to the guilt of the defendant, the jury must acquit."

(B)—Also, the Court told the jury:

"Under the law he is presumed to be innocent and that presumption attends and protects him throughout the trial or until such time as it is overcome by legal and competent evidence upon the part of the State."

(C)—Again, the jury was instructed:

"You are instructed that the State is required to prove all of the material allegations in the information and to prove them to your minds beyond a reasonable doubt. A reasonable doubt is not a mere possible or imaginary doubt, because everything relating to human affairs and depending upon moral evidence is open to some possible or imaginary doubt; but it is such a doubt as would cause a prudent person to pause or hesitate in the graver transactions of life; . . ."

(D)—And, finally, the Court gave an instruction of several pages stating the various verdicts that the jury could render—i. e., first degree murder, second degree murder, manslaughter, and not guilty—and the instruction concluded in this language:

"In other words, gentlemen, if you find the defendant guilty of some degree of homicide and if you entertain a reasonable doubt as to whether it is first degree or second degree, then you shall resolve that doubt in his favor and you will find him guilty of murder in the second degree; or if you entertain a reasonable doubt as

to whether he is guilty of murder in the second degree or guilty of manslaughter, then you shall resolve that doubt in his favor and find him guilty of the lesser degree, that is, manslaughter. However, gentlemen, if upon the whole case you entertain a reasonable doubt as to whether the defendant is guilty or innocent, then you shall resolve that doubt in his favor and acquit him. . . .''

It is apparent that in the foregoing instructions the Court covered the same point as that involved in the refused Instruction No. 3. Therefore, no error was committed by the Court in refusing to give the requested instruction. See *Campbell* v. *State,* 215 Ark. 785, 223 S. W. 2d 505, and *Meador* v. *State,* 201 Ark. 1083, 148 S. W. 2d 653.

III. *Objection to the Giving of an Instruction.* The Court gave the jury Instruction S-9 which reads:

''You are instructed that a bare fear on the part of the defendant that the taking of the life of the deceased was necessary to save his own life or to prevent his receiving great bodily injury, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the defendant in killing the deceased, really acted under the influence of such fears, and not in a spirit of revenge.''

To the giving of this instruction, the defendant made a general objection and saved an exception and made it Assignment No. 5 in his motion for new trial.

In order to see whether the instruction should have been given, it is well to see what other instructions were given that made this cautionary instruction proper. The Court, at the request of the appellant, gave detailed instructions covering the matter of self-defense:

(A)—The Court told the jury:.

''You are instructed that under the law a person does not have to wait until the party attacking has actually done

him violence before he has a right to strike in his own self-defense; but if the defendant as a reasonably prudent person acting upon the facts and circumstances as they appeared to him, and from his standpoint, actually believed that the deceased was attempting to kill him or do him great bodily injury, then the defendant had the right to defend himself; so if you believe from the evidence in this case that the defendant acting as a reasonably prudent person at the time he killed the deceased, and upon the facts and circumstances as they appeared to him and from his standpoint, believed that the deceased was attempting to kill the defendant or do him great bodily injury, then the defendant had the right to stand his ground and defend himself and shoot the deceased at the time."

(B)—In another instruction the Court told the jury:

"You are instructed that, to justify a killing in self-defense, it is not essential that it should appear to the jury to have been necessary; but it is sufficient, if the defendant honestly believed, acting upon the facts and circumstances from his standpoint, and without fault or carelessness on his part, that the danger was so urgent and pressing that the killing was necessary to save his own life or to prevent him from receiving great bodily injury."

(C)—And in another instruction the Court told the jury:

"The jury is instructed that in passing upon the question of whether the defendant, A. T. Lamb, at the time of firing the shot that killed the deceased, acted in self-defense as defined by other instructions given you by the Court, it is your duty to place yourselves as nearly as possible in the position of the defendant, A. T. Lamb, at the time of the shooting, taking into consideration all the facts and circumstances that then and there surrounded the defendant, A. T. Lamb, taking into consideration the excitement and confusion surrounding the situation, and the defendant, A. T. Lamb, should not be held to the same deliberate care in ascertaining the danger and the force necessary to repel it as would be used

by a person in afterward viewing the situation from a place of safety uninfluenced by excitement or danger, but all that would be required of him is that he act as a reasonable prudent person would under the same circumstances and condition.''

We have quoted the foregoing instructions, not for the purpose of approving them but, in order to show how far the Court went, at the request of the defendant, in instructions on self-defense. Certainly in view of these instructions, it was proper for the Court to also give the Instruction S-9 which is practically in the language of § 41-2235, Ark. Stats., which reads:

''Bare fear no justification.—A bare fear of those offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing; it must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under their influence, and not in a spirit of revenge. (Rev. Stat., ch. 44, div. 3, art. 2, § 24; C. & M. Dig., § 2374; Pope's Dig., § 3000.)''

A careful review of the entire record discloses no error and the judgment is affirmed.