HARRY BAILEY *v.* STATE OF ARKANSAS

CR 73-77                                              498 S.W. 2d 859

Opinion delivered September 10, 1973
[Rehearing denied October 8, 1973.]

*Donald Poe,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Deputy Atty. Gen., for appellee.

LYLE BROWN, Justice. Appellant Harry Bailey was convicted of murder in the second degree in connection with the shooting death of W. R. Johnson. After a brief recitation of the evidence we shall enumerate and discuss the four points advanced for reversal.

Appellant owned, and resided on, a small farm in the Weeks community in western Scott County. He rented an adjoining eighty acre tract which was being occupied by W. R. Johnson as a tenant. Johnson moved out of the house but left some of his personal belongings and kept the key. When appellant found need for the house he went to see Johnson about the key and that meeting resulted in a heated encounter. Appellant testified that he was unable to get the key; that Johnson struck appellant in the face; and that Johnson threatened to kill appellant. The next confrontation of significance between the two men was on the day of the shooting, July 17, 1972. Appellant went to Stinson's Garage in Weeks to pick up some personal items. He had a rifle in his pickup truck. Appellant transacted his business at the garage and just as he was getting in his truck, Johnson drove up and stopped. Johnson got out of his truck and walked toward appellant's truck. Appellant testified that he thought Johnson was intending to kill him, so, in fear of his life, appellant shot and mortally wounded Johnson.

The State offered the testimony of three eyewitnesses to the shooting. They testified that Johnson was unarmed; that as Johnson approached appellant's truck appellant said: "Johnson, I thought I told you to get out of the country"; that Johnson replied: "Well, go ahead and shoot. I'm not afraid of your gun"; and that appellant thereupon fired the fatal shot. Appellant insisted that he fired the shot because he feared for his life, although he conceded that Johnson displayed no weapon.

On appellant's behalf, Richard Aldridge testified that on the day of the encounter at the farm, the witness heard Johnson tell appellant that he would kill appellant the next time he saw him. Other evidence and trial procedure pertinent to the case will be recounted as the points for reversal are discussed.

POINT I. *The trial court erred in failing to provide a 1973 jury selection to try the case in January 1973.* In Scott County, January falls within the November term of court. The panel from which the jury was selected was chosen for the November 1972 term. If appellant desired to challenge the panel, a motion to that effect should have been made before his jury was empanelled and sworn. He did not do this. In *Carruthers v. Reed,* 102 F. 2d 933 (1939) the Eighth Circuit Court of Appeals said:

> Under the law of Arkansas a challenge to the panel or motion to quash must be promptly made and it is too late if the jury has been empanelled and sworn. *Brown* v. *State,* 12 Ark. 623 (See 35 C.J. 377). If no objection was made at the trial, it is too late to urge it for the first time after verdict.

POINT II. *The court erred in denying the proffered psychiatrist's testimony.* Appellant called as a witness a duly licensed medical doctor specializing in psychiatry. Appellant had consulted the doctor after the shooting and the doctor would have, according to the proffered testimony, given an opinion of the state of mind of appellant at the time of the shooting. We emphasize that appellant was not interjecting the issue of insanity. Appellant's attorney stated that he would prove by Dr. Chambers that the doctor had visted and consulted with appellant and that in the doctor's opinion, appellant fired the fatal shot through fear generated by the first confrontation at or near the tenant house. "As a general rule, the opinion of experts is not received if all the facts can be ascertained and made intelligible to the jury, or if the matter is such as men in general are capable of comprehending." 2 Wharton's Criminal Evidence § 502 (1955). The jury was furnished with a history of the background encounter between the parties; they had the testimony of three eye witnesses to the shooting;

and they had a history of the shooting as viewed by the appellant. Any testimony given by the psychiatrist as to the cause of the shooting would have been cumulative and also would be based on the version of the shooting as recited to the doctor by appellant. The trial court did not err in refusing to admit the testimony of the psychiatrist.

POINT III. *The court erred in giving its instructions and refusing the requested instructions of appellant.* The specific argument on appeal with respect to instructions is that the court erred in giving court's instructions 16 and 18. Instruction 16 is the same as instruction S-9, discussed and approved in the case of *Lamb* v. *State,* 218 Ark. 602, 238 S.W. 2d 99 (1951). It was there held that the cautionary instruction (S-9) was appropriate when the case goes to the jury on the theory of self-defense. Instruction 18 is lifted from *Tatum* v. *State,* 172 Ark. 244, 288 S.W. 904 (1926). In *Tatum* the instruction was numbered 15. In the case at bar appellant made the single objection that the instruction did not inform the jury that they could conclude that appellant may not have had the requisite intent to commit murder.

POINT IV. *The court erred in permitting the State to bring in rebuttal evidence after both sides rested, and further erred in refusing appellant the right to rebut the rebuttal witness.* As to the first facet of the point, the court permitted the State, after both sides had rested, to produce the testimony of Walter Sussex. The purpose of the Sussex testimony was to rebut the defense testimony to the effect that the deceased Johnson had a bad reputation for being peaceful and law-abiding. The action of the trial court was within the province of its discretion. *Rochester* v. *State,* 250 Ark. 758, 467 S.W. 2d 182 (1971). After the testimony of Sussex, appellant asked permission to recall a number of witnesses in surrebuttal. They were all character witnesses and the court apparently perceived that they had related all they knew about the reputation of the deceased for turbulence and violence. At least we cannot say the court abused its discretion in denying appellant the right to recall them.

Affirmed.