---

## DEAL v. STATE.

Opinion delivered February 25, 1907.

EVIDENCE—THREATS—RES GESTAE.—Evidence in a murder case that defendant, a few hours before he killed deceased, threatened to shoot his gun "till it melted," where the threat was directed not against deceased but against a third person, was too remote and indefinite to constitute part of *res gestae*.

Appeals from Phillips Circuit Court; *Hance N. Hutton*, Judge; reversed.

### STATEMENT BY THE COURT.

The indictment in this cause charges, in apt words, that the appellant, Pickens Deal, on or about the 15th day of Decem-

ber, 1902, committed the offense of murder in the first degree by shooting one Cuba Bronson in Phillips County, Arkansas. Trial was had at the October term, 1906, of the Phillips Circuit Court, which resulted in a verdict of murder in the first degree. The appellant was sentenced to be hanged on the 11th day of January, 1907, but obtained stay of execution from this court, and the cause is now here for review on appeal from the Phillips Circuit Court.

The testimony on behalf of the State tended to prove that on the 15th day of December, 1902, there was a "crap game" at the home of "Cuba" or "Cooper" Bronson in Phillips County in which appellant and Cuba Bronson and several others engaged. Cuba Bronson won all they had. All the players "dropped out" except Cuba and appellant. Cuba won all appellant had, then "staked" him for fifty cents, which appellant likewise lost. "Thereupon," as one of the witnesses related it, "appellant got up, told deceased that he had treated him like a son-of-a-bitch, and went to his bed and got his gun; that deceased was at the time on his knees counting his money; which position he kept until the defendant reached for his pistol and began to shoot; that he pointed his pistol toward the forehead of deceased, caught him by the arm and began to shoot; after the first shot appellant and deceased got to scuffling, and he heard deceased ask some one to take him off between the first and second shots, but that defendant told witness that he had better get out or he would turn on him; witness then ran home; that deceased died that night; and that it all occurred in Phillips County, Arkansas."

Bronson was shot in the forehead and between the lower part of the right ear and the back of the neck, also under the lower part of the right ear.

Thomas Isaac for the State testified over the objection of appellant as follows: "On the afternoon before the killing Pickens Deal was coming down the road, and I spoke to him and asked him concerning a scrap he had had with another fellow. * * * He had his gun with him, and said he intended to shoot it until it melted if they didn't quit running over him. Said he wouldn't be very long about it. He didn't say he was going to shoot any particular fellow. He did not mention the deceased."

Appellant saved his exceptions to the ruling of the court in admitting this evidence. The testimony of appellant, if believed by the jury, would have warranted the jury in finding appellant guilty of voluntary manslaughter, or even a verdict of acquittal.

Motion for new trial, assigning as error, among other things, the admission of the testimony of Thomas Issac, was filed and overruled.

*W. D. Dinning,* for appellant.

1. The evidence was not sufficient to warrant a verdict of murder in the first degree. It can not be said that this was a premeditated, deliberate killing. 76 Ark. 315.

2. The court erred in admitting the testimony of Thomas Isaac detailing a conversation with defendant prior to the shooting of deceased, concerning a difficulty with and threats toward "another fellow." 21 Am. & Eng. Enc. of Law (2 Ed.), 219 and cases cited; *Id.* 220; 52 Ark. 303; 70 Ark. 610; 73 Ark. 152; 73 Ark. 407; 66 Ark. 494; 65 Ark. 261; 61 Ark. 52; 57 Ark. 287.

*Wm. F. Kirby,* Attorney General, and *Daniel Taylor,* for appellee.

WOOD, J., (after stating the facts.) There was evidence to justify a verdict for murder in the first degree, aside from the testimony of Thomas Isaac. But, if the jury had believed appellant, they would have been warranted in acquitting him or in finding him guilty of voluntary manslaughter. The jury might have used the testimony of Isaac to supply the malice and premeditation which but for his testimony they might have concluded did not exist. The testimony of Isaac was therefore prejudicial. It tended to show a general malevolent spirit, a wicked and abandoned disposition; that appellant was in a frame of mind fatally bent on mischief which culminated in the killing of Bronson. But the testimony was clearly incompetent, because the threat "to shoot his gun till it melted," made several hours before the tragedy, was not directed against Bronson, the man who was killed, "but against another fellow." The proof showed that there was no ill will between appellant and Bronson before the killing. On the contrary, they were shown to be on friendly terms. Appellant ate supper with Bronson at the latter's home

a short time before the killing. The threats were "in the air," so to speak. They were too remote and indefinite to become a part of the *res gestae. Casteel* v. *State,* 73 Ark. 152; *Meisenheimer* v. *State, Id.* 407; *Levy* v. *State,* 70 Ark. 610; *Billings* v. *State,* 52 Ark. 303; 21 Am. & Eng. Enc. of Law (2 Ed.), 219, 220; *Bird* v. *United States,* 180 U. S. 356. The admission of this evidence was error. No specific error is pointed out in the court's charge, and we find none. The judgment is reversed for the error indicated, and cause remanded for new trial.