GRAVES v. STATE.

Opinion delivered September 25, 1922.

1.  CRIMINAL LAW—REMARK OF COURT.—A remark of the court that certain testimony was immaterial will not be considered on appeal where no objection was made nor exception saved at the time the remark was made.

2.  HOMICIDE—BURDEN OF PROOF—INSTRUCTION—An instruction in a murder case, in the language of the statute, that, the killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused unless by the proof on the part of the prosecution it is sufficiently manifest that the offense committed only amounted to manslaughter or that the accused was justified or excused in committing the homicide, was not erroneous.

3.  CRIMINAL LAW—FAILURE TO REQUEST INSTRUCTION—Where defendant requested no instruction submitting the issue of manslaughter in a prosecution for murder, he cannot complain of the court's omission to give such an instruction.

4.  HOMICIDE—INSTRUCTION AS TO PLEA OF SELF-DEFENSE.—An instruction that the "plea" of self-defense was founded on the principle of necessity, that it must have appeared to defendant, not only that the danger was imminent, but that it was so pressing and urgent that, to save himself from immediate death or great bodily harm, the killing of the deceased was necessary, *held*

not open to the objection that the plea was interposed by defendant because it was necessary to do so.

5. CRIMINAL LAW—MISLEADING INSTRUCTION—SPECIFIC OBJECTION.—Specific objection should be made to language in an instruction thought to be misleading.

6. HOMICIDE—EVIDENCE OF DEFENDANT'S ACTS AND STATEMENTS.—Acts and statements of defendant, not in the hearing and presence of· deceased and not directed toward or about him, were inadmissible.

7. HOMICIDE—EVIDENCE HARMLESS· WHEN.—Admission of evidence that, some time before killing deceased, defendant displayed a gun while intoxicated and made threatening statements was not prejudicial where the evidence showed similar statements and conduct on defendant's part immediately before the killing.

8. CRIMINAL LAW—RES GESTAE.—Evidence of threatening acts and conduct of defendant immediately before the killing was admissible as part of *res gestae*.

Appeal from Lincoln Circuit Court; *W. B. Sorrels,* Judge; affirmed.

*D. E. Waddell, A. J. Johnson, Rogers & Terral, Caldwell, Triplett & Ross,* for appellant.

*J. S. Utley,* Attorney General; *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

HUMPHREYS, J.    Appellant was indicted in the Lincoln Circuit Court for murder in the first degree for killing Isaac Hartley. Upon trial of the charge he was convicted of murder in the second degree and adjudged to serve a term of twenty-one years in the State Penitentiary as punishment therefor. From the judgment of conviction an appeal has been duly prosecuted to this court. The killing occurred on the night of the 12th day of November, 1921, at Grady, in front of a drugstore conducted by Jim Taliaferro. Some hour or more before the killing, appellant, the constable of the township, who was drinking to some extent, appeared at the show tent of a carnival company in another part of the town and caused those present to scatter and run in every direction by displaying his gun and a handful of cartridges. He made the statement that he was the law and wanted to see whether he had enough cartridges to go around.

The deceased was not present during this occurrence. He seems, however, to have been there either earlier or later, and to have been somewhat under the influence of liquor, claiming a bill of sale on a part of the show property. Subsequently both went to the drugstore near the scene of the killing. The deceased and several other parties were in the drugstore when appellant entered. When appellant entered, Taliaferro, observing that he was drinking, requested that every one go, and directed the boy at the soda fountain to put out the lights. When the boy got on the counter in an attempt to comply with Taliaferro's order, the appellant, with pistol in hand, ordered the boy not to turn out the lights. Appellant then took a position at the front door, asserted that he was the law or boss, and that no one could go out until he said so. The deceased attempted to go out but was prevented by appellant. During the incident appellant was generous with oaths. Taliaferro finally prevailed upon appellant to put up his gun and allow all of them to go out. He then closed the store, but was engaged about twenty minutes in doing so on account of the lock being out of repair. At this juncture the testimony sharply conflicts. That offered by the State tends to show that while Taliaferro was locking the door appellant attempted, without cause, to shoot Leon Stanfield, one of the party, but was prevented from doing so by Taliaferro, who knocked the pistol down as it fired; that in the struggle which ensued between appellant and Stanfield, appellant again fired the pistol at Stanfield but missed him and hit the deceased, the ball entering the back of his neck and killing him instantly. The testimony offered by appellant tended to show that, after the drugstore had been closed and appellant was being taken home by Taliaferro, deceased attacked him with an automobile pump, and appellant fired upon and killed deceased in self-defense.

In the course of the trial appellant was permitted to prove an uncommunicated threat against him, made by deceased to Taliaferro about 11 o'clock a. m. on the

day of the killing. On admitting the testimony, the court made the remark that he regarded it as immaterial. The record also reflects that the statements made and acts committed by appellant on the show ground, out of the presence and hearing of deceased, tending to show a general malevolent spirit and wicked disposition as well as deliberation, were introduced by the State over the objection and exception of appellant.

Appellant's first contention for reversal is, that the court destroyed the effect of the uncommunicated threat by remarking that it was immaterial. No objection was made or exception saved at the time to the remark of the court. The objection cannot, therefore, be considered on appeal. *Yazoo & M. V. Ry. Co.* v. *Solomon,* 123 Ark. 66; *Lisko* v. *Uhren,* 130 Ark. 111.

Appellant's next contention for a reversal of the judgment is, that the court erred in giving instruction No. 25, which is as follows:

"The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless, by the proof on the part of the prosecution, it is sufficiently manifest that the offense committed only amounted to manslaughter, or that the accused was justified or excused in committing the homicide." The instruction follows the language of the statute and, in the form given, has been approved by this court. *Wilson* v. *State,* 126 Ark. 354, and cases therein cited to the same point.

Appellant's next contention for a reversal of the judgment is that the court erred in failing to define and submit the question to the jury of whether appellant was guilty of voluntary or involuntary manslaughter. Appellant did not request an instruction submitting the issue of manslaughter, and cannot now complain at the omission of the court to do so. *Allison* v. *State,* 74 Ark. 44; *Price* v. *Greer,* 89 Ark. 300; *Bates* v. *Ford,* 110 Ark. 567; *Hayes* v. *State,* 129 Ark. 324.

Appellant's next contention for reversal is that the court erred in giving instruction No. 13, which is as follows:

"The court instructs you that the plea of self-defense is founded solely on the principle of necessity. Before this plea is available in this case, it must have appeared to the defendant not only that danger to him at the hands of the deceased was imminent, but that it was so pressing and urgent that, to save himself from immediate death or great bodily harm at his hands, the killing of the deceased was necessary, and not in a spirit of revenge." Appellant's assault on the instruction is to the word "plea" in the first part of the instruction. He argues that the word "plea" in the connection used would lead the jury to believe that the plea was interposed by appellant because it was necessary for him to do so. It is apparent that the word "plea" was used in the sense of "right." We do not think the jury should have been misled by this slight error in phraseology. If appellant thought so, he should have made a specific objection, calling the attention of the trial court to the defect. *Rock Island Plow Co.* v. *Rankin Bros. & Winn,* 89 Ark. 24; *Williams Cooperage Co.* v. *Clark,* 105 Ark. 157.

Appellant's last contention for reversal is that the court erred in admitting his acts and statements on the show-ground. These acts and statements being done and made out of the presence and hearing of the deceased, not being directed toward or about him, were dissassociated from the crime. The court should have excluded the testimony relating to them. If they stood alone in the case, the admission of them in evidence would have constituted reversible error. *Deal* v. *State,* 82 Ark. 58; *Washington* v. *State,* 83 Ark. 268. Competent testimony of the same character, however, was introduced in the case. Appellant's conduct and statements in the drug-store, immediately preceding the killing, were, in tenor and effect, the same as his statements and conduct on the showground. Appellant's statements and conduct in the

drugstore were a part of the *res gestae,* and for that reason were admissible in evidence. Additional evidence of the same nature as that properly introduced could not have resulted in prejudice to appellant. It is true this additional evidence might have tended to show delibera-tion, and would have been prejudicial to the rights of appellant had he been convicted of murder in the first degree. Deliberation not being an essential element in murder in the second degree, of which appellant was convicted, no prejudice could have resulted to him on this account.

No error appearing, the judgment is affirmed.