BEVIS *v.* STATE.

4399                                                    192 S. W. 2d 113

Opinion delivered January 21, 1946.

Rehearing denied February 18, 1946.

*Giles Dearing,* for appellant.

*Guy E. Williams,* Attorney General and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

SMITH, J.   On his trial upon an information charging him with the crime of murder in the first degree, alleged to have been committed by shooting and killing one Charlie Osborne, appellant was found guilty of voluntary manslaughter, and given a sentence of five years in the penitentiary, from which judgment is this appeal.

The Attorney General has moved to dismiss the appeal upon the ground that no final judgment was rendered. The transcript copies the recital appearing at page 55 of the circuit court record, reading as follows:

"September 6, 1945—Verdict of guilty of Voluntary Manslaughter. Punishment fixed at five years. Judgment pronounced.

"Jury's Verdict: 'We, the jury, find the defendant, Frank Bevis, guilty of the crime of voluntary manslaughter, in manner and form as charged in the information and fix his punishment at imprisonment in the State Penitentiary for a period of 5 years.

W. R. Cook, Foreman'."

Following this, the transcript sets out *in extenso* the motion for a new trial, and on the next page following appears this recital:

"September 7, 1945—Motion for new trial filed. Overruled. Defts. exceptions noted. Appeal prayed and granted. Dft. given 55 days for Bill of Exceptions. Bail Bond at $5,000."

Apparently the clerk of the court copied the orders appearing on the docket of the trial judge without directing, as a part of the judgment, that the defendant be transported to and confined in the penitentiary for the period of time stated in the verdict of the jury. If the clerk has that practice, it is to be severely condemned, and should not be tolerated by the trial judge. The statute contemplates that when the motion for a new trial has been overruled, if one has been filed, and in other cases where no motion for a new trial has been filed, the court shall render judgment upon the verdict of conviction, and a record of the proceeding should, of course, be made. Section 4069, Pope's Digest. It is this judgment which authorizes and directs the sheriff to perform the judgment of the court by transporting the prisoner to the penitentiary for confinement, or for execution, as the sentence pronounced by the court may have directed.

Was there a judgment from which an appeal will lie? Upon the authority of the case of *Durben* v. *Montgomery*, 144 Ark. 153, 221 S. W. 855, which was decided by a divided court, we hold there was. The facts in that case are very similar to those of the instant case. The opinion in that case states that an order was entered upon the records of the court reciting that the jury had returned a verdict in favor of the plaintiff for $450. It was further recited that a motion for a new trial had

been filed, and overruled, and that the defendant had prayed and been granted an appeal. It was not recited that the plaintiff have judgment upon this verdict, nor that process should issue for its enforcement. Upon these facts it was there held:

"The entry in the present case recites the return of the verdict, the acceptance of it by the court and the order overruling the motion for new trial, and the formal entry of judgment would follow as a necessary consequence of the verdict, and the overruling of the motion, the omission to recite a formal judgment being a mere clerical error. The entry, taken as a whole, shows that the cause was finally ended in the circuit court, and an appeal granted to this court after the judgment overruling the motion for a new trial.

"We are of the opinion therefore that the entry shows by fair and necessary inference that judgment was rendered and the entry is sufficient to give this court jurisdiction of the cause. The clerk therefore will be directed to file the transcript as of date on which it was presented to him, which was within six months of the rendition of the judgment, and to issue summons thereon as prescribed by statute."

Here it is certain that appellant was convicted of a felony and given a sentence of five years in the penitentiary, and his motion for a new trial overruled. We, therefore, hold that an appeal lies from the order reciting these facts. If it were required, formal sentence might even yet be pronounced, in which event an appeal would then lie, but we think there is a judgment from which the appeal lies.

It is assigned as error that the court, over appellant's objection, permitted witnesses to testify about a game of dice, called craps, on a Sunday, in which deceased and appellant were participants. This *prima facie* was error, as it is not permissible to prove the commission or a violation of the law other than that charged in the indictment or information. But this testimony was necessary to explain the trouble which eventuated in the death of Osborne.

Joe Young was the first witness called for the state, and on his cross-examination he was asked: "What started it (the trouble)?" and he answered, "Getting drunk and gambling." Testimony shows that deceased suspected and had accused appellant of stealing $700 from him, and that appellant had possession of a bill-fold containing a picture of deceased's baby, and threats of great violence were shown to have been made by deceased, if appellant did not return the billfold and the picture of the baby. These threats could not be explained or understood unless the occasion for making them was shown. Indeed the first testimony as to the drinking and gambling was brought out by appellant's counsel.

Appellant's wife, called as a witness on his behalf, testified that deceased called at her husband's place of business on the day before the shooting, and stated that appellant had gotten his money and that he would rather kill him than do anything else, but that this would not get him his money, but that he would get even with him by tomorrow afternoon at 6 o'clock. On the cross-examination of the witness, she was asked if she remembered the Sunday afternoon when her husband, the appellant, and others had gotten drunk and engaged in a dice game in deceased's store. Objection being made to the question, counsel of the state asked the witness, "Do you remember the Sunday that it is alleged that your husband stole $700 from Charlie Osborne," and the witness answered that she did. This testimony tends to explain the subsequent conduct of the parties and no error was committed in its admission.

Appellant testified that he knew deceased had accused him of stealing his money, and of having his bill-fold and baby's picture, and that deceased had set 6 p. m. of the day following deceased's visit to appellant's place of business as the time limit for restitution, with threats of great violence if his demand was not complied with. It was clearly established that these threats of great personal harm were made, and were communicated to appellant. The testimony shows also that deceased was a man of turbulent disposition and given to the practice

of carrying a pistol. Appellant testified that he was scared of deceased, and believed he would execute his threats, as he did not have deceased's billfold, and had not stolen the money and could not, therefore, make the restitution demanded.

Appellant testified that he sought to avoid deceased and that he remained in his store, in the rear of which he and his wife lived, until after 6 p. m., the expiration of the time limit given by deceased, and that at about 8 p. m. he walked out in the street in front of his place of business, and that when he saw deceased approaching he turned to return to his store, when deceased accosted him, and made a motion which he thought was the beginning of an attempt to draw his pistol, and that he drew his own pistol and commenced firing.

This testimony, if true, constituted a case of self defense, but it is sharply disputed, and the court gave elaborate and clear instructions as to the law of self defense. It was testified that when deceased saw appellant he said he would go over and speak to appellant, and it is denied that he made any demonstration of any kind, but that on the contrary, appellant drew his pistol and began firing when he was spoken to, that deceased started to run and ran across the street, when appellant continued to shoot at him. The undertaker who prepared deceased's body for burial testified that he found two wounds, a small hole in the back and a larger one in the front of deceased's body, near the collar bone. Deceased was unarmed at the time.

This recital of the testimony disposes of the contention that the evidence is insufficient to support the verdict, as in our opinion it would have sustained a conviction for an even higher degree of homicide.

It is assigned as error that the court erred in giving Instruction No. ......, over the objection of appellant on the subject of threats made, and the purpose for which that testimony may be considered. If this assignment is sufficient to identify the instruction it may be disposed of by saying that no objection was made or exception saved

to the instruction at the time it was given, and the objection now made to it will not be considered. *Pixley* v. *State*, 203 Ark. 42, 155 S. W. 2d, 710.

Over appellant's objection and exception, the court permitted the prosecuting attorney to ask appellant if he had not shot his first wife. A similar question was held proper in the case of *Gaines* v. *State*, 208 Ark. 293, 186 S. W. 2d 154. The testimony could of course be considered for the purpose only of affecting the credibility of the witness. He answered that he had not, and that answer concluded the inquiry. Had he answered that he had, he should have been permitted to explain, without elaboration, the circumstances, as for instance that the shooting was accidental, or to explain briefly the circumstances showing lack of criminality, and as the matter was collateral, his answer could not have been shown to be false. *McAlister* v. *State*, 99 Ark. 604, 139 S. W. 684. No attempt was made to do so.

Upon the whole record we find no error, and the judgment must therefore be affirmed, and it is so ordered.