CELLARS *v.* STATE.

4535                                     216 S. W. 2d 47

Opinion delivered December 20, 1948.

Rehearing denied January 17, 1949.

*C. C. Hollensworth* and *J. T. Haley, Jr.,* for appellant.

*Guy E. Williams,* Attorney General and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

ED. F. MCFADDIN. Mrs. Daisey E. Cellars was tried and convicted of the crime of murder in the second degree for the homicide of Ed Harris; and prosecutes this appeal. The motion for new trial contains 12 assignments which we group and discuss in topic headings.

I. *Sufficiency of the Evidence.* Assignments numbered 1, 2 and 3 present this issue. The evidence, viewed in the light most favorable to the State,[1] shows that Mr. and Mrs. Cellars operated a store and dance hall, known as "Cellars' Place" on the Fordyce-Warren highway in Cleveland county. On the night of May 29, 1948, Ed Harris, James Poole and Della Mae Ernest, stopped at "Cellars' Place" and engaged in dancing and the drinking of intoxicants. Mrs. Cellars drank with them, and danced with Harris and Poole. Mr. Cellars and Harris engaged in an argument, and Harris twice knocked Cellars to the floor; and Mrs. Cellars obtained a pistol from the cash register, and shot Harris. He died in a few minutes. Mrs. Cellars claimed that she fired in defense of Mr. Cellars and herself. Witnesses for the State testified that, at the time of the shooting, Harris was five or six feet from Mrs. Cellars, and not advancing on her, and also that he was in the act of leaving the "Cellars' Place." Without further detailing of the evidence, we conclude that her plea of self-defense presented a fact question for the jury.

II. *The Court Martial Record.* Assignments numbered 4, 5 and 7 present this topic. Ed Harris had served as a merchant seaman in the armed forces of the

[1] See *Cooley* v. *State,* 213 Ark. 503, 211 S. W. 2d 114; and *Coffer* v. *State,* 211 Ark. 1010, 204 S. W. 2d 376; and see also cases collected in West's Arkansas Digest "Criminal Law," § 1144(13).

United States in World War II, and had been convicted by an Army Court Martial of the homicide of an American soldier in Italy. Harris had served 42 months of his sentence, and was on parole at the time Mrs. Cellars killed him. When the State rested its case against Mrs. Cellars, her counsel moved for a mistrial, or a continuance, on the ground that the prosecuting attorney had stipulated with her counsel that the court martial record against Harris could be introduced. In response to the motion, the prosecuting attorney said: ''BY MR. GIBSON: In answer to the motion of the attorney for the defendant, the State through the Prosecuting Attorney says that he did agree with the Hon. C. C. Hollensworth, Representative of Bradley County, that the military record of the deceased would be stipulated because of the shortness of time in which he had to obtain such record, but that at the time that this agreement was made it was also understood between the Prosecuting Attorney and the defense counsel that an effort would be made to secure a copy of the record, which the Prosecuting Attorney has this day delivered to the defense counsel and does not object to its introduction but will not be put in a position of introducing it himself and thereby possibly commit reversible error.''

Thus, the prosecuting attorney offered the entire military court martial record to the defense for such use as the defense desired; so there was no reason for a mistrial or a continuance.

The trial court ruled that the judgment of conviction by the court martial could be admitted in evidence, but no other portion of the court martial record could be introduced. Appellant is now complaining because the court refused to allow the introduction of the charge and specification under which Harris had been convicted by the court martial. This charge and specification reads:

''CHARGE: Violation of the 92nd Article of War.

''Specification: In that John E. Harris, merchant seaman, a person serving with the armies of the United States in the field, did, at Brindisi, Italy, on or about 15 December, 1943, with malice aforethought, wilfully, de-

liberately, feloniously, unlawfully, and with premeditation kill one Peter Sambol, a human being, by stabbing him with a knife.''

Without commenting on the propriety of attempting to show the reputation of the deceased by specific acts, and without passing on the correctness of the trial court's rule in excluding said charge and specification, we hold that any possibility of error was rendered harmless by the information which the defendant was allowed to elicit from the State's witnesses, James Pool and George Harris—the latter being the brother of the deceased. This information was shown in the cross-examination of James Poole: "Q. And you knew about him killing a man in the maritime service? A. Yes, sir.''

The following was shown in the testimony of George Harris: "Q. Do you know or recall when your brother, Ed Harris, was sentenced to prison while he was in the Army? A. I do. He was in the Merchant Marines. He wasn't in the Army. Q. Do you know how long he served? A. 42 months. Part of that was across in Naples, Italy, where it happened, and a little over a year in the United States. The big part that he served was across the water until they could get him back here. Q. You say he served 42 months? A. Yes. Q. Do you know what length of term he was serving when he got out? A. Yes, sir. Q. What length term? A. Ten years. Q. Was he out on parole when he was killed? A. Yes, sir.''

In short, the defense showed to the jury by these witnesses substantially all that the court martial charge and specification would have shown, i. e., that Ed Harris had killed a man and been sentenced by a court martial. In the light of this showing, we find that any possibility of error in the ruling of the court regarding the court martial record was rendered entirely harmless, because the matters in the excluded court martial record were shown by other evidence which was admitted. *Williams* v. *State*, 105 Ark. 697,[2] 150 S. W. 579; *Tiner* v. *State*, 109 Ark. 138, 158 S. W. 1087; *Bates* v. *State*, 210 Ark. 1014, 198 S. W. 2d 850.

[2] Only the memorandum appears in the Arkansas Reports; the full opinion is in the Southwestern Reporter.

III. *Exclusion of Evidence.* Assignments numbered 6, 8 and 9 present this issue. The defendant called as her witness Roy Green, sheriff of Bradley county, who testified that he and Martin Morgan and Otto Griffin went to "Cellars' Place" on the night of May 29th, after the killing of Harris. The transcript shows the following: "Q. Was Mr. Cellars there when you got there? A. Yes, sir. Q. I wish you would tell the jury what condition his head and face were in. A. He had a cut place right above his eye; I believe the left side was bleeding. Q. Was he bleeding and did he have his head wrapped up? A. Yes, sir. Q. Was his head swollen? A. I didn't notice about that. Q. You saw his cut place and blood? A. Yes, sir. BY THE COURT: Gentlemen of the jury, you will disregard that question and answer in arriving at your verdict in this case. If that had been directed towards this defendant, it would have been different. BY MR. HOLLENSWORTH: That is all. BY MR. GIBSON: No question."

After the State's rebuttal evidence, the transcript shows this stipulation: "It is agreed that if Sheriff Martin Morgan and State Policeman Otto Griffin should be called as witnesses, the same questions would be asked them and the same evidence offered which was asked and offered by Sheriff Roy Green and that the same ruling of the Court is made and the objections and exceptions of the defendant."

Even if this stipulation were sufficient to constitute an objection to the court's ruling on Green's testimony, still it will be observed that the court's ruling applied only to the last question asked Green, and his answer, *i. e.,* "Q. You saw the cut place and blood. A. Yes, sir."

The ruling on that question and answer was harmless, even if erroneous, because Green had previously testified as to Cellars' injuries.

But appellant wants us to assume that the court's ruling went to *all* of Green's testimony. Even if we make that assumption, still the court's ruling was harmless, because other witnesses had described Mr. Cellars' injuries. At all events, the testimony of Green, Griffin

and Morgan regarding Mr. Cellars' injuries was merely cumulative, and any error in the exclusion of the evidence was rendered harmless, because the same matters were shown by other admitted evidence. See *Williams* v. *State, supra; Tiner* v. *State, supra; Bates* v. *State, supra;* and other cases collected in West's Arkansas Digest, "Criminal Law," § 1170(2).

IV. *Instructions Given.* Assignments numbered 10 and 11 relate to the instructions given by the court. The trial court gave 21 instructions on its own motion, to each of which the defendant made only a general objection. These 21 instructions covered various phases of the case, including: murder in the second degree, malice, voluntary and involuntary manslaughter, justifiable homicide, reasonable doubt, and presumption of innocence. We have reviewed these instructions, and find that each is correct as against the general objection offered to it. The court also gave the defendant's requested instruction No. 2 on self-defense; but in the briefs the appellant contends that she was entitled to an additional instruction on her right to defend her husband. The sufficient answer to that contention is that she requested no such instruction. In *Cooley* v. *State,* 213 Ark. 503, 211 S. W. 2d 114, we cited *Pate* v. *State,* 206 Ark. 693, 177 S. W. 2d 933, and said: "What was said in that case applies here—*i. e.,* if appellant desired an instruction, he should have submitted one to the court 'setting forth a proper statement of the law in that particular, and, not having done this, he cannot complain of the court's failure to give such instruction.' " See, also, 26 Am. Jur. 522, and West's Ark. Dig. "Criminal Law" § 9824.

V. *Instruction Refused.* Assignment No. 10 complains of the court's refusal to give the defendant's requested instruction No. 1, which reads: "The Court instructs the jury that if you believe from the evidence that the deceased was of a rash, turbulent and violent disposition, and that the defendant had knowledge of such disposition, then it is a circumstance for the consideration of the jury in considering the reasonable cause for

defendant's apprehension of great personal injury to herself.''

The trial court admitted evidence of the general reputation of the deceased as being a person of a ''rash, turbulent and violent disposition''; and a correctly worded instruction on this point would have been proper. But the requested instruction amounted to a charge on the weight of the evidence. The concluding clause of the instruction as requested reads: ''. . . then it is a circumstance for the consideration of the jury *in considering the reasonable cause for defendant's apprehension of great personal injury to herself.''* (Italics supplied.)

Assuming the instruction to be otherwise correct, nevertheless, the italicized portion last above quoted, was susceptible of being construed as telling the jury that the defendant *had* reasonable cause for the apprehension of great personal injury to herself; and—if given as requested—this instruction would have been a comment on the weight of the evidence.[3] If the words, ''provided you find she had such apprehension,'' or even the words, ''if any,'' had been added to the instruction, then the vice might have been cured insofar as being a comment on the weight of the evidence. It was sharply disputed as to whether she had any apprehension of personal injury to herself, and the trial court correctly refused this requested instruction. A trial court commits no error in refusing a requested instruction which is erroneous. See *Stoddard* v. *State,* 169 Ark. 594, 276 S. W. 358; *Chambers* v. *State,* 168 Ark. 248, 270 S. W. 528; and see cases collected in West's Arkansas Digest, ''Criminal Law,'' § 830.

The judgment of the circuit court is in all things affirmed.

Wine, J., dissents.

Chas. C. Wine, Justice (dissenting). I do not believe that the law should or does require that either husband or wife must stand idly by while the other

---

[3] Art. VII, § 23 of the Arkansas Constitution provides that ''Judges shall not charge juries with regard to matters of fact . . .''

spouse is being severely assaulted by a known and convicted killer and such is my opinion even though the accused, Daisey E. Cellars, and her husband may have been engaged in an enterprise that was not a good influence in or a credit to the community in which it was conducted. It is undisputed in the case before us that the deceased Ed Harris had assaulted the husband of the accused and twice knocked him to the floor, and that her said husband was cut and bleeding.

The majority opinion holds that the accused was not entitled to an additional instruction to the jury on her right to defend her husband on the theory that she did not specifically request such an instruction. To this I cannot agree.

Where there is evidence which tends to support the issue that the homicide or assault was committed by the accused in the defense of the person of another, the court should fully, correctly, and explicitly instruct as to the law on this point as applied to the facts in the case. A charge on the subject of defense of another should be given even though there is no direct testimony as to such matter where all the evidence in the case is sufficient to raise the issue. 41 C. J. S., 188. And certainly this would be true in the case at bar where there was *ample direct testimony* that the deceased Ed Harris had assaulted the husband of the accused.

If every man has a right to protect his habitation from invasion and in so protecting it he has a right to use such force as may be necessary, or as may reasonably appear to him to be necessary to accomplish this end, certainly it could not be seriously urged that a husband or wife would not have the same right to protect the other spouse from serious attack.

The court should instruct the jury as to theories and grounds of defense supported by evidence; a failure to do so is error requiring reversal of a judgment of conviction. 26 Am. Jur. 534.

So, I must respectfully dissent.