HAWKINS v. STATE.

4768                                    267 S. W. 2d 1

Opinion delivered April 19, 1954.

*Bates & Bates* and *John E. Harris,* for appellant.

*Tom Gentry,* Attorney General, *Thorp Thomas,* Assistant Attorney General, for appellee.

J. SEABORN HOLT, J. A jury convicted appellant of the crime of carnal abuse under § 41-3406, Ark. Stats. 1947, which provides: "Every person convicted of carnally knowing, or abusing unlawfully, any female person under the age of sixteen (16) years, shall be imprisoned in the penitentiary for a period of not less than one (1) year nor more than twenty-one (21) years." His punishment was fixed at a term of three (3) years in the State Penitentiary, and from the judgment is this appeal.

—(1)—

For reversal, appellant first contends that the evidence was not sufficient to convict. We do not agree. The prosecuting witness, appellant's daughter, became sixteen years of age April 3, 1953. The present charge was filed April 6, 1953. She testified positively that her father had been having intercourse with her since she was nine years of age, and for the past seven years. A physician testified that he examined this little girl, and, in his opinion, she had had sexual intercourse. It was not necessary for a conviction that her testimony be corroborated, since appellant could be convicted on her testimony alone. *Clack* v. *State,* 213 Ark. 652, 212 S. W. 2d 20 and *Willis* v. *State,* 221 Ark. 162, 252 S. W. 2d 618. Appellant stoutly denied the truth of her statements and thus was made a question of fact for the jury. *Waterman* v. *State,* 202 Ark. 934, 154 S. W. 2d 813.

—(2)—

Appellant next argues that the State failed to prove that the act (or acts) had been committed within the three years next before the information was filed. The prosecuting witness testified: "How long had this been

going on? A. Ever since I was nine years old. Q. How many years had that been? A. About seven years.'' She further testified: ''Q. Just tell this jury now what happened on or about January 18, 1953, where you all had been, your mother, and sisters, where you wanted to go, what preparation you made, and what took place, if anything, between you and your father. A. I don't know if I remember that exact date or not, but I think it was the night I and my brothers and sisters went to my cousin's house to stay all night. My father was drunk that night and he came there to get us to go to the show and I went back by the house to change my blouse and he came back in there and had sexual intercourse with me.'' This evidence was sufficient to warrant the jury in finding that the act of intercourse occurred within the three-year period prior to filing the information.

—(3)—

Appellant also questions the jurisdiction of the court to try the case on the charge of carnal abuse, contending that it is undisputed that appellant is the father of the prosecuting witness and that the alleged crime was that of incest (§ 41-811, Ark. Stats. 1947) and not carnal abuse. We do not agree. In a fact situation, in effect, the same as here, we recently held in *Willis* v. *State,* above, that a father might be convicted of carnal abuse where the victim of his lust was his own daughter. The above § 41-3406 makes no distinction as to consanguinity, but makes it a crime to carnally know or abuse ''any female person'' under the age of sixteen years.

—(4)—

Next appellant says that the court erred in excluding the testimony of Preston Hawkins, appellant's twelve-year-old son, to the effect that his mother's sister, Mrs. Miller, had told him and appellant's other children to '' 'swear anything even to lies, against their daddy to send him to the penitentiary, and if they did not do so, he and the other children would be sent to the Reform

School,' for the reason that said testimony was a part of a scheme and plan to get rid of the defendant so that their mother and entire family of children could get on the welfare, * * *'' and that ''this conspiracy was relevant to the ultimate question of whether the jury would believe prosecuting witness, or not.''

The record reflects that the prosecuting witness was never asked directly or, in effect, the above question propounded to Preston, — that is, — whether Mrs. Miller had told appellant's children to ''swear anything even to lies,'' against their father. No foundation was laid for this testimony which was intended to impeach the prosecuting witness. The fact that Mrs. Miller, a third party, might have been prejudiced against appellant could not be shown for the purpose of impeaching the prosecuting witness. ''A witness cannot be impeached by evidence tending to show that a third person was prejudiced against the accused,'' *Benton* v. *State,* 30 Ark. 328, (Headnote 4). We therefore find no merit to this contention.

—(5)—

Error was also alleged in the court's refusal, upon objection by the State, to allow the appellant to answer the following question: ''Thurman, I will ask you, do you know or have you knowledge of any threats being made to you or members of your family by the Welfare Department or by Mrs. Miller?'' The record shows exceptions saved by appellant to the court's ruling, but appellant made no offer to show what appellant would have said had he been permitted to answer. We have nothing on which to base error on the ruling of the court. *Baldwin* v. *State,* 119 Ark. 518, 178 S. W. 409 and *Wooten* v. *State,* 220 Ark. 755, 249 S. W. 2d 968.

—(6)—

Appellant says error was committed by the court in refusing to allow John Hawkins to answer the following question: ''Has any of the Hawkins' family ever been charged with a felony?'' The record shows the

following testimony for appellant by witness, Hawkins, on direct examination: "Q. Mr. Hawkins, has Thurman ever been arrested to your knowledge, charged with a felony before this case? A. No, sir. Q. Has any of the Hawkins' family ever been charged with a felony? Mr. GUTENSOHN: I object. THE COURT: Objection sustained." Again appellant made no offer to show what witness would have said had he been allowed to answer. What we said in paragraph —(5)—, above, applies with equal force here.

—(7)—

Finally, it is argued that: "The court erred in sustaining an objection by the State to the testimony of Mr. Charles Evans to the effect that about three years ago, while he lived near the defendant's home, he saw Johnnie Lou Hawkins and Wanda Faye Hawkins, daughters of the defendant and prosecuting witnesses, slip away from their home after dark, come by his house, enter cars with boys in them, and leave, as this was an impeachment of the witnesses, the foundation having first been laid by asking said witnesses if such were true, to which they replied 'no'."

It appears that on cross examination by appellant's counsel, the prosecuting witness and a younger sister both denied having slipped away from home at night to go out with boys and appellant sought to contradict this testimony by Evans' evidence. The court properly refused Evans' testimony, in the circumstances. While a witness may be questioned as to certain specific acts for impeachment purposes, however, if such matters are collateral to the issue, as here, such witness may not subsequently be contradicted by a witness of the party (appellant here) putting the question. The examiner is bound by the answer given. *McAlister* v. *State,* 99 Ark. 604, 139 S. W. 684, and *Bevis* v. *State,* 209 Ark. 624, 192 S. W. 2d 113.

In the McAlister case, we held: "While it is proper to permit a witness to be asked as to specific acts affecting his credibility, yet if such matters are collateral

to the issue, he can not, as to his answer, be subsequently contradicted by the party putting the question.'' (Headnote 2).

Finding no error, the judgment is affirmed.