EDDINGTON v. STATE.

4819                                   286 S. W. 2d 473

Opinion delivered February 6, 1956.

*C. M. Martin,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Asst. Atty. General, for appellee.

ED. F. McFADDIN, Associate Justice. On an information charging him with first degree murder for the homicide of Edgar Thrower, the Jury convicted the appellant, Nathaniel Eddington, of second degree murder. His appeal brings before us the fifteen assignments contained in his motion for new trial.

I. *Sufficiency of the Evidence.* According to the appellant's witnesses, he was entirely without fault or guilt of any kind and was acting in his own necessary self defense and also in defense of his kinsman, Buddy Smith. But the long established rule governing appeals

in criminal cases is, that this Court views the evidence in the light most favorable to sustain the Jury verdict. *Dowell* v. *State,* 191 Ark. 311, 86 S. W. 2d 23; *Slinkard* v. *State,* 193 Ark. 765, 103 S. W. 2d 50; *Higgins* v. *State,* 204 Ark. 233, 161 S. W. 2d 400; and *Lamb* v. *State,* 218 Ark. 602, 238 S. W. 2d 99. Whether to believe the State's witnesses or the defendant's witnesses was a decision for the Jury. *King* v. *State,* 194 Ark. 157, 106 S. W. 2d 582. The Jury elected to believe the State's witnesses; and our duty on appeal is to see whether the evidence, so viewed in the light most favorable to the State, is sufficient to sustain the conviction.

According to the State's witnesses, a party of four people—being (1) Napoleon Davis, (2) his wife, Versie Mae Davis, (3) Buddy Smith, and (4) the appellant—drove to the Busy Bee Cafe near Bearden about midnight of February 19, 1954, and found several other people in the cafe, where food and beer were being legally served. P. L. Wright and wife operated the cafe. Shortly after the appellant's party arrived at the cafe, a dispute arose to which appellant was not a party: Edgar Thrower, Timothy Thrower and O. D. Juniel "ganged up" on Napoleon Davis, causing him to hold his three adversaries at pistol point while he and his wife retreated to the cafe entrance and then to their car nearby. Appellant also left the cafe and entered the Davis car. Versie Mae Davis was driving, and Napoleon Davis and appellant were in the seat beside her. When the car stopped less than a block away from the cafe, appellant seized Napoleon Davis' pistol, jumped from the car, and raced back toward the Busy Bee Cafe. He saw Edgar Thrower and Buddy Smith standing about four feet apart. Appellant, from a distance of about fifty feet, yelled: "Look out, Buddy," and then shot Edgar Thrower in the chest, causing instant death. The testimony of P. L. Wright and Troy Lee Thompson (each claiming to have been an eye witness) was to the effect just stated.

Appellant admitted that he took the pistol from Napoleon Davis and used it in shooting Edgar Thrower. The Jury had the right to conclude that the grabbing of the pistol, the running back toward Edgar Thrower, the warning to Buddy Smith, and the shooting of Thrower, all showed sufficient malice and intention to constitute even a greater offense than second degree murder. Certainly the evidence is legally sufficient to support a conviction for second degree murder. See § 41-2206, Ark. Stats.

II. *Instruction.* The Court fully instructed the Jury on all applicable phases of homicide, self defense, burden of proof, presumption and all other appropriate matters; and the only assignment in the motion for new trial, relating to instructions, is the appellant's claim that the Court should have given his requested Instruction No. 2, which is a long instruction of two printed pages. There are several reasons why this requested instruction should not have been given, but it is sufficient to mention only one such reason: and that is, because the instruction was incorrect in stating the law as to self defense. The instruction concluded with this language:

" . . . and if, under all the circumstances, he, at the moment, believed, and had reasonable grounds to believe, that it was necessary to save his own life, or to protect himself from great bodily harm, he had the right to kill Edgar Thrower. *He not only had the right to kill him but under the law it was his legal duty to slay him,* and you will by your verdict acquit him; and if you have a reasonable doubt upon this proposition you will give him the benefit of the doubt and acquit him." (Italics our own.)

The italicized language does not correctly state the law regarding the claim of self defense. See § 41-2236, Ark. Stats. There is no "duty to slay" involved in the plea of self defense. It is only an excuse for homicide and not a duty to commit it: it is a defense and not a retribution. See generally: *Stoddard* v. *State,* 169 Ark.

594, 276 S. W. 358; and *Graves* v. *State,* 155 Ark. 30, 243 S. W. 855. So, without mentioning other vices in the instruction, we conclude that it was fatally defective in the use of the italicized language. The burden is on the party asking an instruction to ask one that is a correct statement of the law; and a Trial Court commits no error in refusing a requested instruction which is erroneous. See *Cellars* v. *State,* 214 Ark. 326, 216 S. W. 2d 47; *Chambers* v. *State,* 168 Ark. 248, 270 S. W. 528; and other cases collected in West's Arkansas Digest, "Criminal Law," 830.

III. *Absence of Weapons on the Body of Deceased.* The Trial Court permitted the coroner to testify that he searched the body of the deceased and found no weapons. The appellant objected to this evidence because the coroner did not search the body of the deceased until about an hour after the killing; but it was shown that the body had not been moved and the time lapse between the killing and the arrival of the coroner was fully explained to the Jury. Under these circumstances it was for the Jury to decide the weight and credibility to give to the testimony of the coroner. Furthermore, two other witnesses—Granville Warrick and George Redding—testified, without objection, that they made a search and found no weapons on the body of the deceased or near his body and that they were there and subsequently assisted the coroner wher he made his search. The testimony of these two witnesses was admitted without objection; and would tend to render harmless any possible error that might have been committed in the admission of the testimony of the coroner. See *Maxey* v. *State,* 76 Ark. 276, 88 S. W. 1009; and *LeGrand* v. *State,* 88 Ark. 135, 113 S. W. 1028.

IV. *Sale of Bootleg Whiskey.* In several assignments in the motion for new trial, appellant claims that the Court committed error in refusing appellant the right to interrogate witnesses as to whether P. L. Wright was selling bootleg whiskey at the Busy Bee Cafe. It was shown that the sale of beer was legal at the cafe but, of

course, the sale of bootleg whiskey would have been illegal. The defense attorney asked P. L. Wright on cross-examination:

"Q. So you say you had not just sold those three Negroes bootleg whiskey back in your kitchen?

"A. No, sir."

Again, the defense attorney asked P. L. Wright:

"Q. . . . and didn't Napoleon Davis and some other Negroes come to your house and buy some whiskey?

"A. No, sir."

After interrogating P. L. Wright and receiving these answers, the defense counsel sought to impeach Wright on this collateral matter by asking other witnesses if they had bought bootleg whiskey at Wright's restaurant or home. Of course, the question of whether Wright had sold bootleg whiskey was entirely *collateral*[1] to the issue of the homicide of Edgar Thrower; and when defense counsel had asked P. L. Wright the questions about the sale of bootleg whiskey and received the answers as quoted, then the defense counsel could not impeach Wright on this collateral matter which defense counsel had injected into the case. In *Hawkins* v. *State,* 223 Ark. 519, 267 S. W. 2d 1, in discussing impeaching witnesses on collateral matters, we said:

"While a witness may be questioned as to certain specific acts for impeachment purposes, however, if such

---

[1] On what is "collateral," there is a clear statement in an Annotation in 82 American State Reports, 51: "Since collateral matters cannot be made the basis of impeaching a witness by contradicting him, the question naturally arises, What are collateral matters? What test can be applied to determine whether a question is collateral to the issues or not? The very generally approved test may be found stated in the syllabus to *Saunders* v. *City etc. R. R. Co.,* 99 Tenn. 130, 41 S. W. 1031, as follows: 'Would the cross-examining party be entitled to prove the fact as a part of, and as tending to establish, his case? If he would be allowed to do so, the matter is not collateral; but, if he would not be allowed to do so, it is collateral. Collateral matters, in this sense, are such as afford no reasonable inference as to the principal matter in dispute.' A frequently quoted test is cited in *Combs* v. *Winchester,* 39 N. H. 13, 75 Am. Dec. 203: 'The test whether the matter is collateral or not is this: If the answer of the witness is a matter which you would be allowed on your part to prove in evidence—if it had such a connection with the issue that you would be allowed to give it in evidence—then it is a matter on which you may contradict him.' "

matters are collateral to the issue, as here, such witness may not subsequently be contradicted by a witness of the party (appellant here) putting the question. The examiner is bound by the answer given. *McAlister* v. *State,* 99 Ark. 604, 139 S. W. 684, and *Bevis* v. *State,* 209 Ark. 624, 192 S. W. 2d 113.''

V. *Appellant's Attempt to Impeach the Testimony of Corene Green.* Troy Lee Thompson testified that he was an eye witness to the killing of Edgar Thrower. In an effort to impeach Thompson's testimony—that he was an eye witness—his mother, Corene Green, was called by appellant; and it was thought that she would testify that her son, Troy Lee Thompson, was asleep at her home at the time of the killing. But when Corene Green's testimony was not as expected on the point, appellant sought to impeach her testimony by offering certain unsworn statements it was claimed she had made to appellant's attorney. The Trial Court refused to allow such statements, after first finding and declaring that Corene Green was not a hostile witness. The Court's ruling is assigned as error; but we find no harmful error to have been committed. An impeaching witness may be impeached in most cases (58 Am. Jur. 370); but appellant offered no other witness to show that Troy Lee Thompson was asleep at his mother's home at the time of the killing of Edgar Thrower. If appellant's attorney had been allowed to testify as to the unsworn statements of Coreen Green, such testimony of the attorney would only have impeached Corene Green but would *not* have been any *substantive evidence* as to the whereabouts of Troy Lee Thompson. Our holding in *Comer* v. *State,* 222 Ark. 156, 257 S. W. 2d 564, is decisive on this point. We there said:

''We have often held that the prior inconsistent statements of a witness are admissible for impeachment but not as substantive evidence of their truth. *Minor* v. *State,* 162 Ark. 136, 258 S. W. 121; *Sisson* v. *State,* 168 Ark. 783, 272 S. W. 674.''

In an Annotation in 82 American State Reports, 62, the holdings are summarized in this language:

"If a party cannot possibly help his case by impeaching his own witness, such impeachment will not be permitted: *Largin* v. *State,* 37 Tex. Cr. Rep. 574, 40 S. W. 280. The rule is, therefore, firmly established that a party can discredit his own witness by proof of his contradictory statements, only where such witness has testified to facts which are damaging to the party, and he has been injured by the testimony: *Bailey* v. *State,* 37 Tex. Cr. Rep. 579, 40 S. W. 280; *People* v. *Jacobs,* 49 Cal. 384; *Smith* v. *Briscoe,* 65 Md. 561, 5 Atl. 334; *Erwin* v. *State,* 32 Tex. Cr. Rep. 519, 24 S. W. 904; *Chism* v. *State,* 70 Miss. 742, 12 So. 852; *People* v. *Mitchell,* 94 Cal. 550, 29 Pac. 1106; *McDaniel* v. *State,* 53 Ga. 253. . . .

"Evidence offered solely to impeach a party's own witness and which has no other tendency is not admissible: *Nathan* v. *Sands,* 52 Neb. 660, 72 N. W. 1030; *Harlan* v. *Green,* 31 Misc. Rep. 261; 64 N. Y. Supp. 79."

Thus, no amount of evidence of contrary unsworn statements by Corene Green could have helped appellant's case or provided substantive testimony on the question of whether Troy Lee Thompson was asleep at his mother's home at the time Edgar Thrower was killed by appellant; and the trial court's ruling on the point was not prejudicial to appellant.

VI. *Other Assignments.* We have carefully studied all the other assignments in the motion for new trial and find none of them to possess merit.

Affirmed.