CARNAL *v.* STATE.

5038                                                          356 S. W. 2d 651

Opinion delivered April 23, 1962.
[Rehearing denied May 21, 1962.]

*Hardin, Barton & Hardin* and *Franklin Wilder,* for appellant.

*Frank Holt,* Attorney General, by *Thorp Thomas,* Asst. Attorney General, for appellee.

ED. F. McFADDIN, Associate Justice.  The information on which the appellant was tried and convicted charged that the appellant "on the 22 day of April, 1961, did unlawfully and feloniously and knowingly have in his possession 155 pounds, more or less, of beef of more than $35.00 in value, knowing same to have been stolen, and possess same with the intent to deprive the true owner thereof against the peace and dignity of the State of Arkansas."[1]  Appellant's motion for new trial contains six assignments.

I.  *Sufficiency Of The Evidence.* Assignments 1 to 4, inclusive, present this issue.  Stites, Spence, and Odom testified that they did steal and kill two head of cattle;[2] that they dressed one and delivered it to Carnal and received from him $25.00 in payment.  It was shown by overwhelming and undisputed evidence that Carnal received and had in his possession this stolen beef.  His defense was that he did not know that the beef was stolen.  Carnal operates the Square Deal Cafe in Fort Smith.  In regard to his dealings with Carnal, Stites testified:

"A.  I told him I could furnish him with some beef at a reasonable price and he says, well, he didn't know, says he thought he might take some and then later on he said, yes, he'd take it—at $25.00 a head.

"Q.  How much a head?

"A.  $25.00 a head.

"Q.  Was there any understanding as to the size of the beef or anything?

---

[1] The information referred to Act No. 48 of 1959 (now found in § 41-3938 Ark. Stats.), which reads: "Any person who shall possess stolen goods, money or chattels which exceed the aggregate value of thirty-five dollars ($35.00), knowing them to be stolen, with intent to deprive the true owner thereof, shall be guilty of a felony, and upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than one (1) year nor more than twenty one (21) years; and if the aggregate value thereof be not more than thirty five ($35.00) dollars, such person shall be guilty of a misdemeanor and shall be punished by imprisonment in the county prison or municipal or city jail not more than one (1) year and shall be fined not less than ten dollars ($10.00) nor more than three hundred dollars ($300.00)."

[2] Each witness is serving a penitentiary sentence for the theft.

"A. I told him it would dress out around 150 or 200 pounds—at least 150 pounds . . .

"A. I told him that the beef was about ready for delivery and he said he would take it and I told him, well, we would bring it in the next evening or night and he said he would be ready."

When Stites took the stolen beef to Carnal the latter arranged to have it processed at the Grand Food Market. This was some time between 8:00 and 11:00 o'clock at night, and the dressed beef had dirt on it. Carnal paid Stites the $25.00 in Carnal's restaurant after the delivery. Stites testified concerning his negotiations with Carnal: "When we were speaking of the beef I told him we dealt no questions asked—in regards to where I got them and all that."

Spence, another of the thieves, testified:

"Q. Now when you unloaded the beef at the Grand Food Market would you tell the Jury as to the condition of the beef as to cleanliness?

"A. Well, the beef had been wooled around on the ground getting the hide off of it and it had dirt on it and some leaves and some grass and—well, just roughly it was pretty dirty.

"Q. Now when you were at the Square Deal Cafe to be paid off, did you have any conversation with Mr. Carnal about any troubles?

"A. Well, when we was leaving Mr. Carnal said to me, he says, 'If you boys get into any trouble over this beef, well, I don't know you.' "

No question was raised in the trial that the beef was worth less than $35.00, but on appeal such is raised. It was testified that the selling price of beef was 32 cents a pound at that time. Carnal paid the butcher at the Grand Food Market eight cents per pound for processing 155 pounds of beef. The 155 pounds of beef at 32 cents would calculate $49.60. See *Davis* v. *State,* 202 Ark. 948, 154 S. W. 2d 112. Giving the evidence in behalf of

the State its strongest probative value, as is our rule on appeal in cases like this (*Eddington* v. *State*, 225 Ark. 929, 286 S. W. 2d 473), there is ample evidence to sustain the jury verdict. It was shown that appellant bought beef in the nighttime, paying $25.00 for it when the market value was $49.60; that he agreed to buy after the seller had told him he was to ask no questions as to the title; and he told the thieves, "If you boys get into any trouble over this beef, well, I don't know you." Certainly, a case was made for the jury.[3]

II. *Evidence Of Prior Convictions.*

Assignment No. 5 in the motion for new trial reads:

"The court erred in admitting over the objection and exception of the defendant at the instance of the Prosecuting Attorney the admission of the evidence of prior convictions of the defendant for drunkenness, for driving a car while under the influence of intoxicants and other specific misdemeanors or violations."

In denying the motion for new trial, the Circuit Judge gave a complete answer to this assignment:

---

[3] In overruling the motion for new trial regarding the sufficiency of the evidence, the Circuit Judge used this language: "Paragraphs 1 through 4 are formal in character and are denied as being without merit for reasons stated herein. It was never disputed that the carcass of beef in question was stolen and the defendant admitted that he purchased it from the thieves. His sole defense was that he did not know that it was stolen property. With the possession admitted and the character of the property undisputed a case was amply made for the jury by the testimony of the state's witnesses together with that of the defendant and his own witnesses, all of whom showed that the deal to purchase the beef and its delivery was accomplished under clandestine circumstances, and at a price which labeled the transaction as felonious. Short of a confession the State is never able to prove guilty knowledge except by the plain inferences to be drawn by reasonable men from the facts and circumstances of a given case; and in the instant case the jury interpreted the proof as evidencing guilty knowledge. In fact in this case there was a singular lack of dispute as to what had happened. The principal differences in the proof consisted of the circumstances that the defendant and his girl friend placed the hour of delivery of the beef at from 8:30 to 9:00 P.M., while the butcher and his helper placed the delivery at around 11:00 P.M. or later; and of course the defendant denied that the beef had been sold to him on a 'no questions asked basis' and further denied that he had told the thieves, in substance, that 'If you boys get into any trouble over this beef, well, I don't know you.' The demeanor and attitude of the defendant and his cohort, Miss Betty McAdoo, while on the witness stand were not calculated to give credence to his assertions, and the court felt that the reaction of the jury as reflected in their verdict, arrived at after due deliberation, was amply justified in the light of all of the facts and circumstances of the case."

"In Paragraph 5 of the motion for a new trial the point is raised that the court erred in admitting certain evidence over the objection and exceptions of the defendant. In this connection it must be pointed out that the attorneys who are filing this motion for a new trial are not the attorneys who tried the case and if they had been present at the trial they would have observed that there were no objections made or exceptions saved to any actions of the court. The contention of defendant in paragraph 5 of the motion is therefore denied."

III. *Passion And Prejudice*. Assignment No. 6 in the motion for new trial reads:

"The verdict of the jury was rendered under the influence of passion and prejudice."

There was no evidence offered to sustain this assignment in the motion for new trial. In overruling this assignment, the Circuit Judge said:

"Paragraph 6 of the motion asserts that the verdict of the jury was rendered under the influence of passion and prejudice. The court knows of no basis whatsoever for this assertion and the motion on this ground is therefore denied."

IV. *Absence Of Corroboration*. Assignment No. 7 in the motion for new trial consists of two paragraphs and reads:

"There is no substantial, admissible or competent evidence in this case. The only evidence on which the verdict could possibly rest would be the evidence of alleged accomplices which is not competent.

"The only substantial evidence in the case tending to connect this defendant with the crime with which he is charged and for which he is convicted was the testimony of the so called or alleged accomplices and this stands uncorroborated or unsupported by any other substantial evidence, and the verdict under the law in the case cannot be sustained under such circumstances, and on account thereof the verdict should be set aside."

In overruling the motion for new trial, the Circuit Judge stated as regards this assignment:

"Paragraphs 7 and 8 assert that the defendant was convicted on the uncorroborated or unsupported testimony of 'so called or alleged accomplices'. The court presumes that this has reference to the testimony of the admitted thieves Charles Stites, Ray Spence and Bill Odom. In the first place, even if these persons are to be regarded as accomplices within the meaning of Ark. Stats. Sec. 43-2116, an analysis of all the facts and circumstances before the jury will evidence that the testimony of these three persons was either undisputed in character or corroborated by the defendant himself, other witnesses, or by other facts and circumstances shown in the case. Secondly, it may be questioned whether the thieves were accomplices to the crime on which the defendant was tried. Lastly, and in any event, the defendant is not now in position to question whether or not these witnesses, Stites, Pence and Odom were accomplices or to complain that an instruction was not given under Sec. 43-2116, for he failed at the trial to either claim that they were accomplices or to request the court to give an instruction defining accomplices or the effect to be given their testimony. *Slinkard* v. *State,* 193 Ark. 765, 103 S. W. 2d 50; *Trotter* v. *State,* 215 Ark. 121, 219 S. W. 2d 636. The motion in this regard is therefore denied."

As has been previously indicated, present counsel on appeal did not represent the appellant in the Trial Court. We have before us a record with no exceptions to testimony, no objections or exceptions to instructions, and no request for instructions. In *Lackey* v. *State,* 67 Ark. 416, 55 S. W. 213, this Court, speaking through Mr. Justice Riddick, said:

". . . counsel for defendants say that the charge of the circuit judge was defective and incomplete in other respects, and contend that it was the duty of the court to give the whole law of the case to the jury, . . . In this State it has been often held that if a

party wishes the trial judge to instruct on any particular point not covered by his charge, he should ask an instruction covering such point. If he sits silent, and makes no effort to remedy the defect, he has no legal ground of complaint.''

The judgment is affirmed.

